In re Gerald Lenard GREENE, Debtor.

Ricky J. Johnson and Brenda
J. Johnson, Plaintiffs,

v.

Gerald Lenard Greene, Defendant.

Bankruptcy No. 3:04 BK 11296.
Adversary No. 3:05–ap–00048.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Feb. 6, 2006.

Mark D. Loerzel, for Plaintiff.

Richard A. Perry, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

On November 8, 2004 Gerald Lenard Greene ("Defendant") filed for Chapter 7 bankruptcy relief. On February 9, 2005 Ricky J. Johnson and Brenda J. Johnson ("Plaintiffs") filed a Complaint seeking a denial of Defendant's discharge pursuant to 11 U.S.C. §§ 727(a)(2) (count I), 727(a)(3) (count II), 727(a)(4) (count III) or in the alternative to have the debt owed Plaintiffs excepted from Defendant's discharge pursuant to 11 U.S.C. § 523(a)(7) (count IV). The Court conducted a trial on August 11, 2005. At the conclusion of the trial, the Court granted summary judgment in favor of Defendant on count IV of the Complaint, 11 U.S.C. § 523(a)(7). In lieu of oral argument, the Court directed the parties to submit memoranda on the remaining counts in support of their respective positions. Upon the evidence and the arguments of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Plaintiffs and Defendant own property adjacent to one another in Reddick, Florida. During February 2003 Defendant burned debris in his pasture, and the fire spread to Plaintiffs' adjoining property destroying Plaintiffs' home and belongings. Defendant was charged in county court in Marion County with unlawful burning. Defendant pleaded guilty and was ordered to pay Plaintiffs $2,400.00 in restitution.

Thereafter, Plaintiffs filed a civil action against Defendant in circuit court to recover the restitution owed to them. The civil action proceeded through discovery and pretrial. On the eve of trial Defendant filed for bankruptcy relief. Defendant listed Plaintiffs as a creditor on his bankruptcy schedules resulting from a tort claim.

#### Bankruptcy Schedules

#### Schedule A: Real Property

Defendant listed his homestead property with a current market value of

$236,000.00.[1] The Internal Revenue Service holds a secured claim on the homestead totaling $13,167.18 resulting from Defendant's failure to pay taxes in 1993, 1994 and 1995. Defendant owns an undivided half interest in the property with Reginald Greene ("Reginald"), his brother.

Defendant filed Amendment to Schedule A on August 5, 2005 listing ownership of another parcel of property in Marion County.[2] Defendant owns an undivided half interest in the property with Reginald. Defendant lists the value of his undivided half interest as $1,882.50.

### Schedule B: Personal Property

Defendant owns a 1988 Toyota pickup that he did not list on his bankruptcy schedules. However, Defendant maintains that he disclosed ownership of the truck to the trustee.

Defendant listed an undivided half interest in seven head of cattle with his wife, Tonja Speights–Greene ("Speights–Greene"), on his bankruptcy schedules. Defendant collectively valued the cattle at $250.00.[3] Defendant and Reginald inherited seven cattle from their mother. Prior to Defendant filing bankruptcy one of the cows died and two were sold resulting in four remaining cattle.

In addition to the seven cattle Defendant inherited, Defendant purchased three pregnant cows in September 2003 for $1,425.00. Defendant testified that Speights–Greene paid for the cows. However, the receipt entered into evidence by Plaintiffs states that the seller received $1,425.00 from Defendant for three "bred cows". The three cows purchased gave birth to three calves before Defendant filed bankruptcy.

Further confusing the matter, Defendant allows Harold Johnson ("Johnson") to use his pasture to graze cattle. Defendant introduced into evidence a statement by Johnson that: 1) in 2003 Johnson had four heifers and three bulls on Defendant's property; 2) on November 8, 2004 Johnson removed all of his cattle with the exception of one heifer from Defendant's property; and 3) as of July 5, 2005 Johnson had two head of cattle on Defendant's property. Defendant introduced the statement to contradict Brenda J. Johnson's testimony that she observed thirteen cows on his property.

Defendant testified at trial that he owned an undivided half interest in seven cattle with Reginald rather than Speights–Greene. Defendant testified that he listed shared ownership of the cattle with Speights–Greene on his bankruptcy schedules rather than with Reginald on the advice of his attorney. Defendant testified that he did not list the three calves on his bankruptcy schedules because the calves were nursing when he filed bankruptcy.

The Court finds that Defendant owned ten cattle at the time he filed his bankruptcy petition. The Court finds Defendant owned an undivided half interest in four cattle with Reginald and solely owned six additional cattle, the three cows he purchased and their offspring.

### Defendant's Income During 2004

On July 6, 2005, Defendant testified in his deposition that he worked occasionally for Top Notch, Trish Mett, Cortez Farms

---

1. The property located in Marion county, Florida is described as Section 36, Township 13, Range 20, W ¾ of SE ¼ of SW ¼ EX S 30 ft for Rd & Ex Com S ¼ CorW 931.77 ft for POB; W 208.71 ft N 208.71 ft E 208.71 ft S 208.71 ft to POB.

2. The property is described as: Section 7, Township 15, Range 22, Plat Book A, Page 076 Mundens Subdivision, Block 13, West 1/2 of Lot 4, Marion County, Florida.

3. Defendant maintains that the cattle lacked value because of their breed.

and Jaime Moore in 2004. Defendant explained that he exercised the discretion to accept or reject work from the employers. Defendant testified that his yearly income totaled less than $2,400.00 and he did not receive a W–2 form for the year 2004. Defendant explained that he paid for his cell phone bill and Speights–Greene paid for all other living expenses.

At trial Defendant testified that during the year 2004 he worked part-time for one employer, John and Mary Piccin (the "Piccins"), the owners of Top Notch. Defendant explained that he earned approximately $3,500.00 working for Top Notch in 2004. Plaintiffs proved that Defendant's income totaled at a minimum $3,500.00 for the year of 2004 by entering into evidence seventeen personal checks written by the Piccins to Defendant totaling $3,535.00 in 2004. Neither party introduced conclusive evidence as to Defendant's total earnings for the year 2004. Defendant does not keep business records and contends that he does not earn sufficient income to file income taxes.[4]

### CONCLUSIONS OF LAW

 The Bankruptcy Code favors discharge of the honest debtor's debts and provisions denying this discharge to a debtor are generally construed liberally in favor of the debtor and strictly against the creditor. See Cohen v. McElroy (In re McElroy), 229 B.R. 483, 487 (Bankr. M.D.Fla.1998). However, there are limitations on the right to a bankruptcy discharge.

 Federal Rule of Bankruptcy Procedure 4005 provides that the initial burden of proof on an objection to discharge lies with the creditor. FED. R. BANKR. 4005.

However, once a creditor meets the initial burden, the debtor has the ultimate burden of persuasion. See Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 619 (11th Cir.1984). That is, the debtor must bring forth "enough credible evidence to dissuade the court from exercising its discretion to deny the debtor['s] discharge based on the evidence presented by the objecting party." Law Offices of Dominic J. Salfi, P.A. v. Prevatt (In re Prevatt), 261 B.R. 54, 58 (Bankr.M.D.Fla.2000).

Count I of the Complaint asserts that Defendant should be denied a discharge pursuant to § 727(a)(2)(A) because he transferred ownership of cattle to his wife and concealed the number of cattle he owned. Count II asserts that Defendant should be denied a discharge pursuant to § 727(a)(3) for failing to maintain records of his employment or income for the year 2004. Count III asserts that Defendant should be denied a discharge pursuant to § 727(a)(4) because he failed to accurately list his assets on his bankruptcy schedules.

### § 727(a)(2)

 Section 727(a)(2)(A) of the Bankruptcy code provides the following:

(a) The Court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition[.]

11 U.S.C. § 727(a)(2) (2004).

---

4. Defendant's Schedule I–Current Income of Individual Debtor(s) was not introduced into evidence.

Under § 727(a)(2)(A), the objecting party must prove by a preponderance of the evidence that: (1) a transfer occurred; (2) debtor transferred his property; (3) the transfer was within one year of the petition, and (4) the transfer was done with the intent to hinder, delay, or defraud a creditor or the trustee. *See Williamson Const., Inc. v. Ross (In re Ross)*, 217 B.R. 319, 323 (Bankr.M.D.Fla.1998). Concealment under this section occurs when a debtor's interest in the property is not obvious, but the debtor continues to reap the benefits the property has to offer. *IRS v. Petersen (In re Petersen)*, 312 B.R. 385, 392 (Bankr.N.D.Iowa 2004) (citing *Kaler v. Craig (In re Craig)*, 195 B.R. 443, 449 (Bankr.D.N.D.1996)).

█ Plaintiff alleges Defendant violated § 727(a)(2)(A) by purchasing Reginald's undivided half interest in the remaining four inherited cattle and transferring an undivided half interest in the cattle to Speights–Greene without consideration. The Court finds that at all times Defendant and Reginald shared an undivided interest in the four remaining cattle inherited from their mother. Because the Court finds that Defendant did not purchase Reginald's interest in the four cattle, he could not have transferred it to Speights–Greene. Accordingly, the Court will not deny Defendant's discharge on that basis.

Plaintiffs also argue that Defendant concealed sole ownership of the four remaining cattle inherited from his mother by purchasing Reginald's share and portraying Speights–Greene as a shared owner in the cattle. Because the Court finds that Defendant did not purchase Reginald's interest in the four cattle, Plaintiff's concealment argument also fails.

### § 727(a)(3)

█ Section 727(a)(3) of the Bankruptcy code provides the following:

(a) The court shall grant the debtor a discharge, unless-

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which he debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

11 U.S.C. § 727(a)(3) (2004).

"The purpose of section 727(a)(3) is to give creditors and the bankruptcy court complete and accurate information concerning the status of a debtor's affairs and to test the completeness of the disclosure requisite to a discharge." *PNC Bank v. Buzzelli (In re Buzzelli)*, 246 B.R. 75, 95 (Bankr. W.D.Pa.2000) (citing *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3rd Cir.1992)). "This statute also ensures that the trustee and creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history." *In re Buzzelli*, 246 B.R. at 95 (citing *Meridian Bank*, 958 F.2d at 1230) (citations omitted). "A creditor objecting to a discharge under § 727(a)(3) has the initial burden of proving (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." *In re Buzzelli*, 246 B.R. at 95 (citing *Meridian Bank*, 958 F.2d at 1232). Once a creditor shows that a debtor's records are insufficient, the burden shifts to the debtor to justify such insufficiencies. *In re Buzzelli*, 246 B.R. at 96 (citing *Meridian Bank*, 958 F.2d at 1233). However, a court should evaluate each case individually as the Bankruptcy Code does not mandate perfection. *In re Wiess*, 132 B.R. 588, 592 (Bankr.E.D.Ark.1991) (citations omitted). "Factors which may be considered by the

court in making this factual determination include debtor's education, the sophistication of the debtor, debtor's business experience, the size and complexity of debtor's business, debtor's personal financial structure, and any special circumstances that may exist." *Id.* (citations omitted).

 Defendant testified that in 2004 he received $3,500.00 in income by working odd jobs. Defendant does not receive a regular paycheck or pay stubs. The checks Defendant received from the Piccans for the part-time work he preformed are personal checks thus making record keeping more difficult. Payroll checks include documentation of an employee's earned salary for the year and his earned salary for the payroll period. Additionally, payroll checks include a stub that an employee may keep for his own records. In order for Defendant to have records of his earned income from the Piccans, he would have needed to copy the personal checks before he cashed the checks.

After observing Defendant's courtroom demeanor and listening to Defendant's testimony, the Court finds that to the extent Defendant failed to keep adequate records, such inadequacies are a result of Defendant's lack of sophistication and business experience. Accordingly, the Court will not deny Defendant's discharge pursuant to § 727(a)(3).

### § 727(a)(4)(A)

 Section 727(a)(4)(A) of the Bankruptcy code provides the following:
(a) The court shall grant the debtor a discharge, unless-
(4) the debtor knowingly and fraudulently, in or in connection with the case-
(A) made a false oath or account[.]
11 U.S.C. § 727(a)(4)(A) (2004).
The purpose of the false oath discharge exception is "to ensure that a debtor provides dependable information to those who are interested in the administration of the bankruptcy estate." *Citrus & Chemical Bank v. Floyd (In re Floyd),* 322 B.R. 205, 214 (Bankr.M.D.Fla.2005) (citing *In re Quimby,* 313 B.R. 779, 783 (Bankr.N.D.Ill. 2004)). A creditor objecting to a discharge pursuant to § 727(a)(4)(A) has the burden of producing sufficient evidence to "give rise to a reasonable inference that the debtor failed to disclose information with the intent to hinder the investigation of the trustee and creditors." *Prevatt,* 261 B.R. at 59 (citations omitted). The burden then shifts to the debtor to overcome the inference with credible evidence. *Id.* (citations omitted). For a false oath to be considered material, it must be shown that it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Chalik,* 748 F.2d at 618 (citations omitted).

 "Although a single omission is generally insufficient to support an objection to discharge, a series of omissions may create a pattern which demonstrates the debtor's reckless disregard for the truth." *Jones v. Phillips (In re Phillips),* 187 B.R. 363, 370 (Bankr.M.D.Fla.1995) (citing *In re Clawson,* 119 B.R. 851 (Bankr.M.D.Fla.1990)). "From this pattern of behavior, fraudulent intent may be presumed." *In re Phillips,* 187 B.R. at 370 (citing *In re Sausser,* 159 B.R. 352 (Bankr.M.D.Fla.1993)).

 Plaintiffs contend that Defendant knowingly and fraudulently made false oaths or accounts by way of omitting assets on his bankruptcy schedules. The Court finds that Defendant's failure to list: 1) the 1988 Toyota truck; 2) the second parcel of real property; and 3) the three calves are material omissions. Additionally, the Court finds Defendant's misrepresentation of the ownership of the seven

cattle (the four remaining cattle inherited from his mother and the three cattle he purchased) to be material. However, the Court finds the omissions to be the result of oversight and inadvertence rather than fraudulent intent. The Court also finds credible Defendant's testimony that he followed his attorney's advice with respect to the manner in which he listed the ownership of the seven cattle. The Court finds that Defendant's lack of sophistication militates against an inference that he possessed fraudulent intent when he followed that advice. Accordingly, the Court will not deny Defendant's discharge pursuant to § 727(a)(4)(A).

## CONCLUSION

The Court finds that Defendant did not transfer or conceal ownership of the four remaining cattle he inherited from his mother. The Court finds that Defendant's lack of records documenting his employment and income from 2004 are the result of his lack of sophistication and business experience and do not warrant a denial of his discharge. Finally, the court finds that the omissions and misrepresentation on Defendant's bankruptcy schedules are attributable to inadvertence, oversight, and a lack of sophistication rather than to fraudulent intent. Accordingly, the Court will overrule Plaintiff's objection to Defendant's discharge pursuant to §§ 727(a)(2), 727(a)(3) and 727(a)(4).

## JUDGMENT

This proceeding came before the Court upon a complaint seeking a denial of Defendant's discharge pursuant to 11 U.S.C. §§ 727(a)(2), 727(a)(3), and 727(a)(4) or in the alternative to have the debt owed Plaintiffs excepted from Defendant's discharge pursuant to 11 U.S.C. § 523(a)(7). Upon findings of Fact and Conclusions of Law separately entered, it is

**ADJUDGED:**

1. Judgment is entered in favor of Defendant, Gerald Lenard Greene, and against Plaintiffs, Ricky J. Johnson and Brenda J. Johnson as to counts I, II, and III. Defendant's discharge will not be denied.

2. Count IV of the complaint is dismissed. Defendant's debt to Plaintiffs is not excepted from Defendant's discharge.