**FILED**
**U.S. Bankruptcy Appellate Panel**
**of the Tenth Circuit**

**March 24, 2017**

**Blaine F. Bates**
**Clerk**

PUBLISH

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

---

**IN RE RICHARD K. SEARS,**

     **Debtor.**

---

**LYNN MARTINEZ, Chapter 7 Trustee,**

     **Plaintiff - Appellee,**

     **v.**

**RICHARD K. SEARS,**

     **Defendant - Appellant.**

**BAP No. CO-16-025**

**Bankr. No. 15-13389**
**Adv. No. 15-1257**
**Chapter 7**

---

**Appeal from the United States Bankruptcy Court**
**for the District of Colorado**

---

Submitted on the briefs.*

John A. Berman, Esq. of Denver, Colorado, for Defendant – Appellant.

Maria J. Flora, of Maria J. Flora, P.C., Denver, Colorado, for Plaintiff – Appellee.

---

     *      After examining the briefs and appellate record, the Court has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. Bankr. P. 8019(g). The case is therefore submitted without oral argument.

Before **CORNISH**, **MICHAEL**, and **HALL**, Bankruptcy Judges.

---

**MICHAEL**, Bankruptcy Judge.

Financial transparency is an integral component of our bankruptcy system. A debtor seeking a discharge in a Chapter 7 bankruptcy case has a duty to fully disclose all of her assets and liabilities, to provide sufficient records to explain her business affairs, and to explain where her money went prior to the filing of the bankruptcy case. If a debtor cannot tell her trustee or creditors what happened to her money, or provide records to show where the money went, and a party in interest objects, she does not get a discharge.

In this case, Richard Sears ("Debtor") ran several businesses and chose not to utilize business accounts. He took over $2.2 million in cash draws from his businesses for personal use. Debtor could not tell his bankruptcy trustee what happened to the $2.2 million, other than to say, "I spent it." The trustee filed an action to deny the Debtor his discharge. After a trial, the bankruptcy court sided with the trustee. Debtor appeals. Finding no reversible error, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY[1]

In 1983, the Debtor began leasing land for hunting and grazing cattle. Beginning in 2004, the Debtor operated his hunting and cattle businesses through five companies (the

---

[1] This factual background is substantially drawn from the bankruptcy court's findings. *See Martinez v. Sears (In re Sears)*, 557 B.R. 193 (Bankr. D. Colo. 2016) (hereafter *"Martinez"*).

"Companies").[2] The Companies generated $9,294,429 in income from 2008-2015.[3] From 2011 through 2013, the Debtor suffered unexpected losses and increased operating costs.[4] The Debtor sought Chapter 7 relief on April 2, 2015 (the "Petition Date"). Lynn Martinez was appointed as Chapter 7 Trustee (the "Trustee"). The Debtor's Schedule F listed a total of $6,375,996.80 in unsecured debt primarily owed in connection with his cattle and hunting businesses.[5]

The Debtor had no personal bank accounts prior to April 21, 2014, when he opened a checking account at Wells Fargo Bank (the "Personal Account").[6] The Debtor's reported income and expenses could not be traced through the Personal Account, because the Companies paid the Debtor's personal expenses. The Debtor had separate checking accounts for each of the Companies, as well as copies of checks with written notes (the

---

[2]     Apache Park Land & Cattle Company, Apache Park Livestock, Inc., Private Land Bucks and Bulls, Inc., Rocky Mountain Romangus, Inc., and Trophy Outfitters, Inc. ("Trophy"). The Debtor was the sole shareholder, officer, and director of each of the Companies, with the exception of Trophy, in which he held a seventy percent interest. *Id.* at 195.

[3]     *Id.* at 195-96.

[4]     *E.g.*, extreme drought made it necessary to find additional pastures, hay prices increased because of drought conditions, harsh winters required more hay, and cattle losses occurred due to increased natural predators. In addition, the state veterinarian quarantined the cattle due to a trichomoniasis outbreak, and the herd was sent to slaughter at significant loss. *Id.* at 196-97.

[5]     Appellant's App. at 248.

[6]     *Martinez*, 557 B.R. at 199. The Debtor did not disclose to the Trustee any personal bank account held prior to the Personal Account. The Personal Account statements during the period the account was active only listed thirty-two transactions.

"Original Records").[7] The Debtor brought to trial a large stack of boxes he alleged contained the Original Records. Those documents were not offered into evidence. Debtor's accountant, Patricia Woods, used the Original Records to create Quickbooks records (the "Reconstructed Records"). The Reconstructed Records were admitted into evidence.

Debtor's records were not adequate to identify transactions or allow the Trustee to make inquiry into them. The Debtor's strategy of using "cashier's checks for draws or intercompany transfers, so the funds would clear the bank more quickly" made money difficult to trace.[8] The Trustee identified over $2.2 million in disbursements from the Companies to the Debtor, his wife, and son between 2009-2015 (the "Owner Draws"). She could not determine the ultimate disposition of those funds. The Debtor failed to produce evidence of the intercompany transfers or to explain the disposition of the Owner Draws, other than to offer a vague explanation that the funds were used for personal or business expenses, for which he offered no documentary support.

On July 6, 2015, the Trustee filed her *Complaint for Denial of Discharge Pursuant to 11 U.S.C. §§ 727(a)(3) and (a)(5)* (the "Complaint").[9] Debtor filed an answer contesting the Complaint. On September 8, 2016, after a two-day trial, the bankruptcy court entered its *Order on Adversary Complaint* (the "Order"), denying the Debtor's discharge pursuant

---

[7]     *Id.* at 201.

[8]     *Id.* at 200.

[9]     Complaint *in* Appellant's App. at 24.

to 11 U.S.C. §§ 727(a)(3) and (a)(5). The bankruptcy court concluded the Trustee met her burden under both §§ 727(a)(3) and (a)(5), ruling that the Debtor "failed to provide the court with information to justify the lack of adequate business records under the circumstances of this case"[10] and "failed to offer an adequate explanation of the disposition of very substantial funds."[11] This appeal followed.

## II. STANDARD OF REVIEW

The bankruptcy court's factual findings, which underpin its legal conclusions, are reviewed for clear error.[12] A factual finding is "clearly erroneous" when "it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made."[13]

Counsel for the Debtor has striven valiantly to cast this case in a light that would require *de novo* review, arguing that the bankruptcy court failed to hold the Trustee to the proper standard of proof, and that, as a result, the entire decision should be, in effect, retried in this Court. We are not persuaded. The bankruptcy court correctly stated the

---

[10]      *Martinez*, 557 B.R. at 202.

[11]      *Id.* at 203.

[12]      *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1292 (10th Cir. 1997) (citing *Clark v. Sec. Pac. Bus. Credit, Inc. (In re Wes Dor, Inc.)*, 996 F.2d 237, 241 (10th Cir. 1993)) (holding the bankruptcy court "clearly erred" in determining a failure to keep records was not justified under § 727(a)(3)).

[13]      *LeMaire ex rel. LeMaire v. United States*, 826 F.2d 949, 953 (10th Cir. 1987) (citing *Cowles v. Dow Keith Oil & Gas, Inc.*, 752 F.2d 508, 510-11 (10th Cir. 1985)).

applicable burdens of proof in actions brought under both § 727(a)(3) and § 727(a)(5).[14]

## III. DISCUSSION

A prima facie case under § 727(a)(3) requires a showing that a debtor "failed to maintain and preserve adequate records and that the failure made it *impossible* to ascertain his [or her] financial condition and *material* business transactions."[15] If a creditor or trustee meets this initial burden, "the burden then shifts to the debtor to justify his or her failure to maintain the records."[16] A party objecting to a debtor's discharge under § 727(a)(5) has the burden of proving facts establishing that a loss of assets occurred.[17] The burden then shifts to the debtor to explain the loss of assets in a satisfactory manner.[18] The ultimate burden under § 727 rests with the plaintiff and must be proven by a preponderance of the evidence.[19]

**The fact that the bankruptcy court used proposed findings of fact and conclusions of law is not properly before this Court and, in any event, does not constitute reversible error.**

---

[14]     *Martinez*, 557 B.R. at 199 (§ 727(a)(3)) and 202 (§ 727(a)(5)).

[15]     *The Cadle Co. v. Stewart (In re Stewart)*, 263 B.R. 608, 615 (10th Cir. BAP 2001) (quoting *Brown*, 108 F.3d at 1295), *aff'd*, 35 F. App'x 811 (10th Cir. 2002).  *See also Blackwell Oil Co. v. Potts (In re Potts)*, 501 B.R. 711, 718 (Bankr. D. Colo. 2013).

[16]     *Stewart*, 263 B.R. at 615.

[17]     *Id*. at 618.

[18]     *Id.* (citing *United States v. Dorman (In re Dorman)*, 98 B.R. 560, 571 (Bankr. D. Kan. 1987)).

[19]     *United States Tr. v. Garland (In re Garland)*, 417 B.R. 805, 810 (10th Cir. BAP 2009) (citing Fed. R. Bankr. P. 4005).

The Debtor argues that the Order is "virtually a verbatim adoption" of the Trustee's Proposed Findings of Fact and Conclusions of Law and such adoption is reversible error.[20] The Debtor did not list this issue in his statement of issues, and has therefore waived this argument.[21] Accordingly, we decline to consider it. Even if the argument had been preserved on appeal, it is not persuasive. A bankruptcy judge's verbatim adoption of proposed findings become those of the court and may be reversed only if clearly erroneous.[22]

**The bankruptcy court did not err in determining the Debtor's records were inadequate to ascertain his financial condition.**

The bankruptcy court determined the Debtor failed to maintain adequate records and that such failure made it impossible to ascertain his financial condition under § 727(a)(3), warranting denial of the Debtor's discharge. "The scope of the debtor's duty to maintain records depends on the nature of the debtor's business and the facts and circumstances of each case."[23] When a debtor carries on a business involving substantial assets, "greater and

---

[20]     Appellant's Br. 16.

[21]     *See Adams–Arapahoe Joint Sch. Dist. No. 28–J v. Cont'l Ins. Co.*, 891 F.2d 772, 776 (10th Cir. 1989) ("An issue not included in either the docketing statement or the statement of issues in the party's initial brief is waived on appeal.").

[22]     *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 572 (1985).

[23]     *Bailey v. Ogden (In re Ogden)*, No. UT-98-042, 1999 WL 282732, at *6 (10th Cir. BAP Apr. 30, 1999) (unpublished opinion).

better record keeping" is warranted.[24] Other circuit courts and bankruptcy courts hold that

records are inadequate where the debtor failed to separate personal and business accounts,[25]

failed to substantiate expenses,[26] or failed to explain dispositions of cash.[27]

The bankruptcy court found all of these factors present in this case. The record

supports the findings. The Reconstructed Records commingled personal and business

expenses.[28] The Reconstructed Records were neither accurate nor complete.[29] The Debtor

and the Trustee were unable to identify the disposition of the Owner Draws or the sources

---

[24]     *Caneva v. Sun Cmtys. Operating Ltd. P'ship* (*In re Caneva)*, 550 F.3d 755, 762 (9th Cir. 2008) ("when a debtor is sophisticated and carries on a business involving substantial assets, 'creditors have an expectation of greater and better record keeping.'" (quoting *Petersen v. Scott (In re Scott)*, 172 F.3d 959, 970 (7th Cir. 1999))).

[25]     *Id.* (debtor's transfer of substantial funds to third party with failure to keep terms or documentation of transfer established a prima facie violation of § 727(a)(3)).

[26]     *In re Juzwiak*, 89 F.3d 424, 428 (7th Cir. 1996) (checking account ledgers, canceled checks, bank statements, and income tax returns were insufficient to reconstruct a debtor's financial condition without the source of funds and substantiation of expenses when personal and business expenses were commingled).

[27]     *Varco Pruden Bldgs. v. Strider (In re Kennington)*, 393 B.R. 430 (Bankr. N.D. Miss. 2008) (failure to maintain distinction between company finances and personal finances, using corporate funds to pay personal expenses, and failing to maintain corporate books making it impossible to verify business dealings resulted in inadequate financial records).

[28]     *Tr.* at 196, *in* Appellant's App. at 510; *Tr.* at 185-86, *in* Appellant's App. at 499-500.

[29]     *Tr.* at 12-13, *in* Appellant's App. at 533-34; *Tr.* at 70-75, 152-55, 64, *in* Appellant's App. at 384-89, 466-69, 585; *Tr.* at 18, 26-30, *in* Appellant's App. at 539, 547-51.

of certain expenses using the Reconstructed Records.[30] We hold that the bankruptcy court did not err in determining the Debtor failed to maintain adequate records, such failure made it impossible to ascertain his financial condition, and denial of Debtor's discharge was warranted under § 727(a)(3).

The Debtor makes another rather unique argument in support of his position that the requirements of § 727(a)(3) have not been met. Debtor argues that, under § 704(a)(4), a Chapter 7 trustee has a duty to "investigate the financial affairs of the debtor."[31] Debtor contends that this duty required the Trustee to undertake a detailed review of all of the Debtor's records, depose the Debtor, the Debtor's bookkeeper, and the Debtor's accountant, and, finally, hire an expert should she deem it necessary in order to fully understand the financial affairs of the Debtor. Debtor argues that the Trustee's failure to undertake such herculean tasks precludes the filing of a complaint under § 727(a)(3) and the resultant denial of his discharge. The Debtor offers no viable legal precedent in support of this argument.[32] Perhaps it is because none exists.

---

[30]     *Tr.* at 70, 72, 152-55, *in* Appellant's App. at 384, 386, 466-69; Appellant's App. at 1191-93.

[31]     § 704(a)(4).

[32]     Debtor's reliance upon *Wazeter v. Mich. Nat'l Bank (In re Wazeter)*, 209 B.R. 222 (W.D. Mich. 1997), is completely misplaced. *Wazeter* dealt with whether summary judgment should have been granted on a § 727(a)(3) complaint, not whether the claim should be denied. Moreover, the *Wazeter* court, citing various authorities, noted that "the burden is not on the creditor to organize and reconstruct the debtor's business affairs" and that "[c]reditors should not be forced to undertake an independent investigation of a debtor's affairs." *Id.* at 228 (citing *In re Juzwiak*, 89 F.3d at 429 and *United States v. Ellis*, 50 F.3d 419, 425 (7th Cir. 1995)).  We agree with those sentiments.

9

**The bankruptcy court did not err in determining the Debtor's inadequate records were not justified by the circumstances of the case.**

The bankruptcy court found that the Debtor's explanations did not justify his failure to maintain adequate records.[33] Our review of the record reveals sufficient evidence to support the bankruptcy court's determination.[34] The bankruptcy court recognized the Debtor had a seventh grade education, but did not find his relative lack of education mitigated his duty to maintain records.[35] The inadequacy of the Debtor's records related to his practice of failing to account for the frequent large cash withdrawals from the

---

[33]     While not clearly enumerated, the Debtor raises three explanations: (1) his limited formal education; (2) his reliance on professionals to maintain his financial records; and (3) the nature of his business made some forms of record keeping impractical.

[34]     The United States Court of Appeals for the Tenth Circuit and this Court have examined when failure to maintain adequate records is justified by looking at the overall circumstances of the case, including the facts and custom of a debtor's specific financial undertaking. *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1295 (10th Cir. 1997); *The Cadle Co. v. Stewart (In re Stewart)*, 263 B.R. 608, 615 (10th Cir. BAP 2001), *aff'd*, 35 F. App'x 811 (10th Cir. 2002). *See also Blackwell Oil Co. v. Potts (In re Potts)*, 501 B.R. 711, 718 (Bankr. D. Colo. 2013) (relevant considerations include the debtor's occupation, financial structure, education, experience, and sophistication (citing *Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880, 882 (6th Cir. BAP 1999))).

[35]     *Martinez*, 557 B.R. at 193.  While other courts have held that a similar lack of formal education justified a failure to keep adequate records, in those cases the debtor's lack of education was combined with lack of business experience and a modest financial undertaking. *See, e.g., Floret, L.L.C. v. Sendecky (In re Sendecky)*, 283 B.R. 760, 764 (8th Cir. BAP 2002) (debtor's poor education and lack of experience along with modest size of business justified lack of record keeping); *Johnson v. Greene (In re Greene)*, 340 B.R. 93 (Bankr. M.D. Fla. 2006) (inadequate records justified when debtor received minimal income from odd jobs and lacked sophistication and business experience).

10

Companies.[36] The record provides no evidence that a reasonable person in similar circumstances would employ such a practice,[37] or that Debtor's practices were commonplace in the type of cattle business run by the Debtor. To the extent the bankruptcy court rejected the Debtor's attempts to justify his poor records because he employed an accountant, the bankruptcy court did not commit error.[38] We affirm the bankruptcy court's finding that the Debtor failed to justify his lack of adequate records under the circumstances of the case.

**The bankruptcy court did not err in determining that a loss of assets occurred under § 727(a)(5).**

The bankruptcy court found that a loss of assets occurred in this case for purposes of § 727(a)(5). Our review of the record reveals sufficient evidence to support the bankruptcy court's determination. No party disputes the existence and amount of the Owner Draws, nor the fact that the Debtor no longer possessed the Owner Draws. We hold that the bankruptcy court did not clearly err in determining that a loss of assets occurred under § 727(a)(5).

**The bankruptcy court did not err in determining the Debtor's explanation for the loss**

---

[36]     *Martinez*, 557 B.R. at 201.

[37]     The Trustee testified that she has seen "debtors who are essentially robbing Peter to pay Paul." *Tr.* at 184, *in* Appellant's App. at 498. Woods testified that "debtor[s] will have a company and then the debtor will have a personal bank account and there are often transfers from one to the other . . . ." *Tr.* at 180, *in* Appellant's App. at 494.

[38]     *CM Temp. Servs., Inc. v. Bailey (In re Bailey)*, 375 B.R. 410, 418 n.3 (Bankr. S.D. Ohio 2007) (records inadequate when debtor failed to provide recorded information of business transactions when he relied on accountant to balance records).

**of assets was not satisfactory under § 727(a)(5).**

The United States Court of Appeals for the Tenth Circuit has not set forth a standard for determining what constitutes a satisfactory explanation of loss of assets under § 727(a)(5). Other courts have determined that such a finding is left to the sound discretion of the court.[39] Multiple circuits require some corroboration of a debtor's testimony as to the loss or disposition of assets.[40] Other circuits and bankruptcy courts have held that explanations of a debtor's circumstances in general terms, that merely suggest reasons for the loss of assets, fall short of the mark.[41]

To explain the loss of the Owner Draws, the Debtor offered his practice of moving money around to "keep the business afloat in the midst of severe challenges" combined

---

[39]    *See, e.g., Blackwell Oil Co. v. Potts (In re Potts)*, 501 B.R. 711, 726 (Bankr. D. Colo. 2013) (and cases cited therein).

[40]    *Id.* The Fifth, Eleventh, and First Circuits have set forth two criteria in determining whether an explanation is satisfactory under § 727(a)(5) that offer guidance. First, it must be supported by some corroboration. Second, the corroboration must be sufficient to eliminate any speculation as to what happened to the assets. *See First Tex. Sav. Ass'n v. Reed (In re Reed)*, 700 F.2d 986 (5th Cir. 1983); *Chalik v. Moorefield (In re Chalik)*,748 F.2d 616, 619 (11th Cir. 1984); *Aoki v. Atto Corp. (In re Aoki)*, 323 B.R. 803, 817-18 (1st Cir. BAP 2005).

[41]    *Potts*, 501 B.R. at 725 ("[E]xplanations of a generalized, vague, indefinite nature such as assets being spent on 'living expenses,' unsupported by documentation, are unsatisfactory."); *McVay v. Phouminh* (*In re Phouminh)*, 339 B.R. 231, 248 (Bankr. D. Colo. 2005) (citing *Bell v. Stuerke (In re Stuerke)*, 61 B.R. 623, 626 (9th Cir. BAP 1986)); *Chalik*, 748 F.2d at 619 ("Vague and indefinite explanations of losses that are based on estimates uncorroborated by documentation are unsatisfactory."); *Baum v. Earl Millikin, Inc.*, 359 F.2d 811, 814 (7th Cir. 1966) (Explanations must consist of more than a "vague, indefinite, and uncorroborated hodgepodge of financial transactions.").

12

with evidence of the Companies' substantial expenses.[42] The bankruptcy court found these explanations unsatisfactory. We find no error in this conclusion. The Debtor made only a vague and general evidentiary showing that the Owner Draws were transferred back to the Companies and used to pay expenses.[43] Put simply, the Debtor failed to account for over $2,000,000 in cash received. Accordingly, we hold that the bankruptcy court did not clearly err in determining the Debtor's explanation of the loss of assets was not satisfactory.

**IV. CONCLUSION**

The bankruptcy court did not clearly err in its findings with respect to the denial of the Debtor's discharge under §§ 727(a)(3) and (a)(5). Accordingly, the bankruptcy court's decision is AFFIRMED.

---

[42]      Appellant's Br. 22.

[43]      *Tr.* at 18, 30-35, *in* Appellant's App. at 539, 551-56. The majority of the testimony regarding the disposition of the Owner Draws lacked documentary corroboration.