FILED
United States Court of Appeals
Tenth Circuit

August 12, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

In re: ADAM L. PEEPLES and
JENNIFER K. PEEPLES,

     Debtors.

-------------------------------------------------

ADRIAN JAMES LEE,

     Plaintiff - Appellant,

v.

ADAM L. PEEPLES; JENNIFER K.
PEEPLES,

     Defendants - Appellees.

No. 18-4124
(BAP No. 18-003-UT)
(Bankruptcy Appellate Panel)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **BACHARACH**, and **McHUGH**, Circuit Judges.
_____

Plaintiff-creditor Adrian James Lee appeals the bankruptcy court's order that

dismissed the adversary proceeding filed by him and his wife against Chapter 7

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

defendants-debtors Adam L. Peeples and Jennifer K. Peeples (collectively the Debtors) and granted the Debtors a discharge.

Under 11 U.S.C. § 727(a), a bankruptcy court "shall grant the debtor a discharge" except in certain specified situations. Relevant here, the Lees sought to deny the Debtors a discharge under 11 U.S.C. § 727(a)(2), (a)(3), (a)(4), (a)(5), and (a)(6). The bankruptcy court held the Lees failed to carry their burden as to each claim and granted the Debtors a discharge.

> [The Lees] don't believe that [the Debtors] should be able to discharge the debt they owe to the Lees. The Lees have been tenacious in their efforts to prevent the [Debtors] from discharging that debt and have accused the [Debtors] of many wrongs. But after hearing all of the evidence presented over three days of trial, the Court has concluded that *the Lees' claims amount to nothing more than a tempest in a teapot*, and the [Debtors] will be granted their discharge.

Aplt. App. Vol. 2 at 240-41 (emphasis added).[1]

Mr. Lee appealed the bankruptcy court's decision on his claims under § 727(a)(2) and (a)(3) to the Tenth Circuit Bankruptcy Appellate Panel (BAP), which affirmed.[2] In this court, Mr. Lee's only argument concerns § 727(a)(3)—Mr. Peeples's failure to preserve business records as grounds to deny the Debtors a discharge. Exercising jurisdiction under 28 U.S.C. § 158(d), we affirm.

---

[1] In its memorandum decision, the bankruptcy court explained that "[n]otwithstanding the organization of the factual findings, all factual findings are equally binding as to all claims." Aplt. App. Vol. 2 at 243.

[2] Mr. Lee is an attorney who represented himself and his wife, Angela L. N. Lee, in the adversary proceeding. Mrs. Lee, however, did not file a Notice of Appeal in either the BAP or this court. The Debtors appeared pro se in the adversary proceeding and the BAP. They also appear pro se in this court.

2

## THE BANKRUPTCY COURT DECISION

In February 2012—more than two years before the Debtors filed their Chapter 7 petition in April 2014—the Lees rented a home to the Debtors and their five young children. Because the Lees had been unable to sell the home or consistently rent it after moving to a different residence three years earlier, they quickly agreed to a one-year lease with the Debtors without conducting any credit or background checks. The Debtors paid a $3,000 security deposit and $3,000 for the February rent, and they also timely paid the March, April, and May rent payments; however, they failed to make the June payment.

The Debtors initially told the Lees they had mailed the June rent check. But as time passed their story began to unravel and they admitted to financial problems and that they had lied about sending the check. Nonetheless, the Lees agreed that the Debtors could make up the June rent by paying $4,000 in July, August, and September. When the Debtors missed the July rent payment, the Lees proposed a new deal. Despite their knowledge that the Debtors "could not afford to pay the rent . . . and that their financial circumstances had taken a turn for the worse," Aplt. App. Vol. 2 at 262, they entered into a contract for the Debtors to buy the home for $655,000. Ultimately and unsurprisingly, the Debtors were unable to obtain financing and defaulted on the contract. The Lees notified the Debtors the lease was back in effect and they owed nearly $12,000 in back rent, late fees, and interest.

In October 2012, shortly after the Debtors defaulted on the purchase contract, the Lees filed an eviction suit and the Debtors' family vacated the home. The

3

Debtors did not defend the suit and in December 2012, the Lees obtained a default judgment for approximately $49,000.

The bankruptcy court found that "after June 2012 the [Debtors] had . . . very little income and were struggling financially. In June 2012, Mrs. Peeples applied for a sub-prime loan, but was denied. She sold most of her Barbie dolls . . . to raise funds. The [Debtors'] car was repossessed in December 2012." *Id*. at 266. And in August 2013, the Debtors and their children "moved in with Mr. Peeples' mother." *Id*. and 249.[3] Further, by the summer of 2013, when the Debtors first failed to appear at collection proceedings associated with the first default judgment, the bankruptcy court found "there was no evidence . . . that . . . the [Debtors] had any property other than some household furnishings, [some] Barbie dolls, some used DVDs, and a few other items of personal property of minimal value." *Id*. at 266.

From 2011 until the early summer of 2012, Mr. Peeples operated a business known as the Silver Eagle Store, which sold commemorative Silver Eagle coins. Most of the business was conducted on eBay and PayPal. Mr. Peeples testified that he kept a ledger that listed assets, liabilities, owner's equity, and individual transactions; however, the ledger was lost. The Lees maintained that without the ledger they could not ascertain the Debtors' financial condition or understand their

---

[3] In July 2013, the Lees filed a second suit against the Debtors. Like the first suit, the Debtors failed to defend, and in September 2013, the Lees obtained a default judgment for approximately $89,000. By the time the Debtors filed their petition in April 2014, the Lees had filed two more suits against Mr. Peeples.

material business transactions. As such, they argued the Debtors should be denied a discharge under § 727(a)(3), which provides:

(a) The court shall grant the debtor a discharge unless—

. . . .

(3) the debtor has . . . failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

There were, however, some Silver Eagle Store records available from third parties. For example, the Lees subpoenaed eBay records, but they did not introduce them into evidence. PayPal records, which were also subpoenaed by the Lees, were introduced into evidence but only for "the limited purpose of establishing the existence, duration, and general activity of the accounts." Aplt. App. Vol. 2 at 251. The Lees also subpoenaed and introduced as evidence, Silver Eagle Store's bank records from JPMorgan Chase Bank (Chase).

Specifically, the Lees focused on the lack of any records to prove what the Debtors did with $29,000 in cash withdrawn from the Chase account in March 2012. That month—more than two years prior to the Debtors' bankruptcy filing—there was approximately $38,000 in the account; however, later that month nearly all the money was withdrawn, including $29,000 in cash and more than $8,600 in ATM and debit card withdrawals. Mr. Peeples testified that he spent the $29,000 to buy coin inventory. But the Lees maintained there were no records to prove that the money was used to buy inventory and suggested instead that the Debtors might have secretly

5

invested $29,000 in bitcoins—an investment that would be worth several million dollars today.

The bankruptcy court gave no weight to Mr. Peeples's purported admission that it was impossible for the Lees to determine the Debtor's financial condition without the ledger. The court found that Mr. Lee—an attorney—was guilty of "overreaching," *id*. at 241, when he improperly "used . . . requests for admission . . . to establish the elements of his case by getting the [pro se Debtors] to admit to disputed and potentially damaging facts," *id*. at 242. More to the point, the court found that Mr. Peeples's admission was a "legal conclusion," *id*. at 268, which was the prerogative of the court.

The bankruptcy court found that although "the PayPal records in particular, cannot be fully explained without the testimony of a competent witness, the Court is convinced that the [Debtors'] business transactions relating to Silver Eagle Store can be ascertained from the[] [third-party] records." *Id*. at 268-69.

> What is relevant is whether there were material financial transactions that cannot be determined and whether there may be assets remaining from those transactions. Although Mr. Peeples lost the ledger that he kept for Silver Eagle Store, the records of the store that the third parties maintained[,] document the [Debtors'] material business transactions and financial condition. And what the evidence clearly shows is that Silver Eagle Store was a short-lived, unsuccessful business venture that conducted no business for more than a year and a half before the [Debtors] filed bankruptcy.

*Id.* at 269. The court therefore determined that the Lees failed to meet their burden

under § 727(a)(3).[4]

The bankruptcy court also denied the Lees' other claims under § 727. For

example, the Lees made a claim under § 727(a)(2) that the Debtors concealed assets;

under § 727(a)(4) for alleged false statements in their financial disclosures; and under

§ 727(a)(5) for the "loss" of money from the Chase bank account.

First, the bankruptcy court found "the Lees produced no evidence to show that

the [Debtors] owned and concealed valuable property when they filed bankruptcy."

Aplt. App. Vol. 2 at 267. Second, the court found "absolutely no evidence," *id*. at

277, that the Debtors had unreported income in 2012 that they "secreted . . . away,"

*id*.; instead, "the evidence is that the [Debtors'] family of seven struggled to maintain

their household in 2012, had no other income, and would need this income for living

expenses, including payment of rent to the Lees," *id*. Last, the court rejected the

Lees' claim under § 727(a)(5).

> As they have consistently done in this case, the Lees exaggerate the
> significance of the purported [loss] at issue. The Lees make much of
> the [Debtors'] lack of memory regarding what happened to the funds.
> But the majority of the purported 2012 income the Lees have identified
> was received more than two years before the [Debtors'] bankruptcy
> case, and the amount of income at issue was not even great enough to
> place the [Debtors] above the federal poverty guideline for 2012.
> Whatever income the [Debtors] received from their online activities was
> likely consumed by the ordinary, day-to-day expenses of maintaining a
> seven-person household, particularly one that was incurring a $3,000
> per-month rent expense. By late June 2012, the [Debtors] had

---

[4] The bankruptcy court further found that Mr. Peeples was justified in not
preserving the Silver Eagle Store ledger because financial records were available
from third parties. We need not address this issue to resolve the appeal.

essentially run out of funds, and Silver Eagle Store was not profitable enough to support them.  There is no loss of assets in this case.

*Id*. at 280 (footnotes omitted).[5]

The bankruptcy court ultimately concluded that "there are sufficient records and sufficient evidence for this Court to ascertain the [Debtors'] business transactions and financial condition," *id*. at 282, denied the Lees' claims as "primarily based on inferences, or more accurately speculations," *id*. at 264, and granted the Debtors a discharge.

## STANDARD OF REVIEW

"Although this appeal is from a decision by the BAP, we review only the Bankruptcy Court's decision." *First Nat'l Bank of Durango v. Woods (In re Woods)*, 743 F.3d 689, 692 (10th Cir. 2014) (internal quotation marks omitted).  "We treat the BAP as a subordinate appellate tribunal whose rulings are not entitled to any deference (although they certainly may be persuasive)." *Id*. (brackets and internal quotation marks omitted).

"A decision whether to grant or deny a discharge is in the sound discretion of the bankruptcy court, and a bankruptcy court's [grant] of discharge is therefore reviewed for abuse of discretion." *United States Tr. v. Garland (In re Garland)*, 417 B.R. 805, 810 (10th Cir. BAP 2009) (internal quotation marks omitted). "A court abuses its discretion where it commits a legal error or relies on clearly erroneous factual findings, or where there is no rational basis in the evidence for its

---

[5] The bankruptcy court found that the Lees abandoned their claim under § 727(a)(6).

ruling." *Gillman v. Ford (In re Ford)*, 492 F.3d 1148, 1153 (10th Cir. 2007) (brackets and internal quotation marks omitted).

"We review matters of law de novo, and we review factual findings made by the bankruptcy court for clear error." *In re Woods*, 743 F.3d at 692 (internal quotation marks omitted). "A finding is not clearly erroneous unless it is without factual support in the record or if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made." *In re Ford*, 492 F.3d at 1153 (internal quotation marks omitted).

## ANALYSIS

"A prima facie case under § 727(a)(3) requires a showing that a debtor failed to maintain and preserve adequate records and that the failure made it *impossible* to ascertain his or her financial condition and *material* business transactions." *Martinez v. Sears (In re Sears)*, 565 B.R. 184, 189 (10th Cir. BAP 2017) (brackets and internal quotation marks omitted). "If a creditor or trustee meets this initial burden, the burden shifts to the debtor to justify his or her failure to maintain the records." *Id.* (internal quotation marks omitted). "The ultimate burden under § 727 rests with the plaintiff and must be proven by a preponderance of the evidence." *Id.*

Section 727(a)(3) is intended to allow creditors to "reasonably . . . ascertain [the debtor's] present financial condition and to follow his business transactions for a reasonable period in the past." *Solis v. Asif (In re Asif)*, 455 B.R. 768, 791 (Bankr. D. Kan. 2011) (internal quotation marks omitted). "[I]f corporate records are necessary to determine the debtor's financial condition, and the debtor has not kept or

preserved such records, the debtor's discharge should be denied pursuant to

§ 727(a)(3)." *Id*. at 792 (internal quotation marks omitted). In other words, "[t]here

should be some *nexus* between the Debtor's failure to keep records, destruction or

loss of records and the creditor's ability to ascertain the debtor's financial condition."

*In re Caulfield*, 192 B.R. 808, 823 (Bankr. E.D.N.Y. 1996) (emphasis added).

"The bankruptcy court has wide discretion" to determine whether the movants

have satisfied their burden to prove that the debtor's failure to keep and preserve

financial records made it impossible to ascertain his or her financial condition and

material business transactions. *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696,

703 (5th Cir. 2003) (internal quotation marks omitted). This "determination is a

finding of fact reviewed for clear error." *Id*.

Bank records and credit card statements "may be sufficient to enable creditors

to trace financial transactions and evaluate the debtor's financial condition" unless

they "ran a business enterprise engaged in a steady stream of large scale transactions

involving substantial sums of money." *In re Juzwiak*, 89 F.3d 424, 428 (7th Cir.

1996). Unlike the business enterprise in *Juzwiak*, Silver Eagle Store was "a short-

lived, unsuccessful business venture," Aplt. App. Vol. 2 at 269, from which Mr.

Peeples, on one occasion and more than two years before filing for bankruptcy,

withdrew $29,000 in cash. These facts distinguish Silver Eagle Store from the facts

in *Juzwiak* that justified the denial of a discharge for the failure to maintain adequate

records.

Nonetheless, we agree with Mr. Lee that it was error for the bankruptcy court to rely on records that were not in evidence or admitted for only a limited purpose—the eBay and PayPal records—to satisfy Mr. Peeples's obligation to preserve the ledger. But this argument misses the larger issue—whether the failure to preserve the ledger was grounds to deny the Debtors a discharge.[6]

In deciding whether to deny a debtor a discharge, "the Bankruptcy Code must be construed liberally in favor of the debtor and strictly against the creditor." *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1292 (10th Cir. 1997). As such, "the reason for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural." *Jones v. Gertz*, 121 F.2d 782, 784 (10th Cir. 1941). *See also Korrub v. Cohn (In re Cohn)*, 561 B.R. 476, 492 (Bankr. N.D. Ill. 2016) ("Denial of discharge is a drastic remedy reserved only for the worst actors."); *Haupt v. Belonzi (In re Belonzi)*, 476 B.R. 899, 904 (Bankr. W.D. Pa. 2012) ("Completely denying a debtor his discharge . . . is an extreme step and should not be taken lightly.") (alteration and internal quotation marks omitted)).

The Debtors were in financial difficulties by June 2012 when they could not pay their rent and in dire financial straits two years later when they filed for

---

[6] Mr. Lee asserts that Mr. Peeples's testimony that he spent $29,000 to buy coin inventory cannot substitute for information in the missing ledger under § 727(a)(3). *See, e.g.*, *Quicken Loans, Inc. v. Splawn (In re Splawn)*, 376 B.R. 747, 758 (Bankr. D. N.M. 2007) ("[A] debtor may not use oral testimony to supplement information that is absent from the actual records." (internal quotation marks omitted)). But the bankruptcy court did not rely on this testimony.

bankruptcy. Among other things, the bankruptcy court found that this family of seven moved in with Mr. Peeples's mother, their only car had been repossessed, and they were reduced to applying for a pay-day type loan. Further, "[w]hatever income the [Debtors] received from their online activities was likely consumed by the ordinary, day-to-day expenses of maintaining a seven-person household, particularly one that was incurring a $3,000 per-month rent expense." Aplt. App. Vol. 2 at 280. Significantly, the court found no wrongdoing by the Debtors—they were not the "worst actors" who deserved the "extreme step" of being denied a discharge.

According to Mr. Lee, however, because the unsubstantiated disposition of $15,000 in cash was grounds to deny the debtor a discharge in *United Bank of Denver v. Greenwalt (In re Greenwalt)*, 63 B.R. 555 (Bankr. D. Colo. 1986), the same result should obtain here. But Mr. Lee ignores the self-dealing and fraudulent conduct that justified the denial of a discharge in *Greenwalt*, including the violation of § 727(a)(2), which involved the preferential transfer of more than $100,000 in cash in addition to the unexplained $15,000 cash expenditure. As the *Greenwalt* court explained, this is a "tawdry tale of casual disregard of the provisions of the Bankruptcy Code and of the interests of third parties . . . wherein a discharge was [previously] denied in the proceedings concerning . . . [the] Debtor's husband." *In re Greenwalt* at 556 (citation omitted). The "tawdry" conduct on which the court based its decision to deny a discharge in *Greenwalt* is not present here.

Last, we will not consider Mr. Lee's argument that the bankruptcy court was bound by Mr. Peeples's "admission" that it was impossible to determine the Debtors'

12

financial condition or material business transactions without the Silver Eagle Store ledger. In this regard, the BAP noted that the "bankruptcy court clearly faced challenges when dealing with these self-represented parties, including how to weigh testimony from the Debtors that was contrary to admissions from them that Mr. Lee had obtained through improper use of Requests for Admissions and stipulated facts contained in the Pretrial Order." Aplt. App. Vol. 1 at 7 n.2. But the BAP also explained that "Mr. Lee assigns no error in this appeal to any evidentiary rulings surrounding prior admissions." *Id*. Now, for the first time in this court, Mr. Lee argues that the court should have "honored" Mr. Peeples's admission. Aplt. Opening Br. at 15. However, Mr. Lee failed to raise the issue in the BAP, and we will not consider it for the first time on appeal. *See Walker v. Mather (In re Walker)*, 959 F.2d 894, 896 (10th Cir. 1992) (the general rule is that we will not consider an issue not raised below).

## CONCLUSION

The decision to grant the Debtors a discharge was not an abuse of discretion. The judgment of the bankruptcy court is affirmed.

Entered for the Court

Jerome A. Holmes
Circuit Judge

13