**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 12 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

In re GUY BENNY BROWN,

Debtor.

RONALD D. GULLICKSON,

Plaintiff-Appellee,

v.

GUY BENNY BROWN,

Defendant-Appellant.

No. 96-3145
No. 96-3148

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 95-4021-RDR)

Robert D. Lantz, (Robert D. Kroeker, with him on the brief), Martin, Leigh & Laws, Kansas City, Missouri, for the Plaintiff-Appellee.

Carl R. Clark, (F. Stannard Lentz and John J. Cruciani, with him on the brief), Lentz & Clark, Overland Park, Kansas, for the Defendant-Appellant.

Before BALDOCK, KELLY, and LUCERO, Circuit Judges.

BALDOCK, Circuit Judge.

Debtor-Appellant Guy Benny Brown appeals from the district court's affirmance of the bankruptcy court's order denying his discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and (a)(4)(A). Creditor-Cross-Appellant Ronald Gullickson appeals the district court's reversal of the bankruptcy court's denial of Brown's discharge pursuant to 11 U.S.C. § 727(a)(3). We exercise jurisdiction pursuant to 28 U.S.C. § 158, and affirm in part, reverse in part, and remand.

The bankruptcy court found three discrete bases for denying Brown's discharge. These were (1) the making of a transfer within one year of the bankruptcy with the intent to hinder, delay or defraud a creditor, 11 U.S.C. § 727(a)(2)(A), (2) the failure to keep records, 11 U.S.C. § 727(a)(3), and (3) the knowing or fraudulent making of a false oath in connection with the bankruptcy, 11 U.S.C. § 727(a)(4). Our review of the bankruptcy court's legal conclusions is de novo. In re Schnieder, 864 F.2d 683, 685 (10th Cir. 1988). However, we review the bankruptcy court's findings which underpin its conclusions under the more deferential clearly erroneous standard. In re Wes Dor, Inc., 996 F.2d 237, 241 (10th Cir. 1993). We review de novo mixed questions consisting primarily of legal conclusions drawn from the facts. Id. Finally, we are cognizant in our review of the requirement that the Bankruptcy Code must be construed liberally in favor of the debtor and strictly against the creditor. In re Adlman, 541 F.2d 999, 1003 (2d Cir. 1976). With these standards in mind, we turn to the resolution of the case.

I.

Brown's first contention is that the bankruptcy court erred by ruling that he should be denied a discharge pursuant to 11 U.S.C. § 727(a)(2)(A). The bankruptcy court found that Brown's grant of a security interest in an asset, an antique car collection, prior to filing bankruptcy violated § 727(a)(2)(A).

In order for a debtor to be denied a discharge under § 727(a)(2)(A), the objector must show by a preponderance of the evidence that (1) the debtor transferred, removed, concealed, destroyed, or mutilated, (2) property of the estate, (3) within one year prior to the bankruptcy filing, (4) with the intent to hinder, delay, or defraud a creditor. 11 U.S.C. § 727(a)(2)(A). It is clear on the record that all but the last of the four elements of this provision were proven.[1] Brown admits that he transferred a security interest in his antique car collection four days prior to filing bankruptcy. Accordingly, the contested issue is whether Brown had the intent to hinder, delay, or defraud a creditor when he transferred the interest.

---

[1]     Although the bankruptcy court found that Brown had "concealed his property, just four days before filing bankruptcy, by placing his vintage automobile collection beyond the reach of Gullickson,"(emphasis added), we believe the more correct term is that he transferred property. See 11 U.S.C. § 727(a)(2)(A). There is no evidence in the record that Brown had attempted to hide this transaction. In fact, this loan transaction appears in the bankruptcy schedules. However, there is no question that the grant of a security interest does constitute a transfer. See 11 U.S.C. § 101(54).

This distinction does not affect the determination of whether the first element is fulfilled, but we believe the inference of fraudulent behavior flowing from a concealment is greater than from a transfer, and thus we must note this discrepancy.

3

Gullickson argues that Brown's course of conduct, discrepancies between earlier financial statements and the bankruptcy schedules, and the presence of "badges of fraud" prove Brown's fraudulent intent. The bankruptcy court cited these reasons in denying Brown's discharge. The first badge on which the bankruptcy court relied is that Brown transferred a security interest in his antique car collection four days before he filed bankruptcy. The mere fact that a transaction occurred soon before the filing of bankruptcy does not necessarily support the inference of fraud. See 6 Collier on Bankruptcy § 727.02(3)(a) (15th ed. rev. 1996). The circumstances of the transaction must be examined. See 6 id. In this case, the corporations of which Brown was a fifty percent owner required a cash infusion to pay attorneys and suppliers. The granting of a security interest in his only unencumbered asset in order to obtain much needed capital for his businesses, which were his sole source of income, does not evince fraud. See In re C.A. Thurman, 901 F.2d 839, 842 (10th Cir. 1990) (holding that business purpose for transfer supports finding of no fraudulent intent). See also In re Miller, 39 F.3d 301, 307 (11th Cir. 1994). There was no evidence that the money was not reasonably used or that it was squandered. Indicia of fraud are totally lacking. See id.

The bankruptcy court also found that Brown's continued possession and use of the automobiles and the fact that the collection would be exempt in bankruptcy as a result of the transaction constituted badges of fraud. However, it is an unwarranted leap to infer fraud anytime a person transfers a security interest in an item and maintains possession of

4

it.  There is little question that if an individual transfers title of an item but continues to exercise dominion over it, that fraud could be inferred.  However, that is not the present case.  It is uncontroverted that the security interest was granted in an arm's length transaction.  Thus, Brown's mere possession of the vehicles does not constitute evidence of fraudulent intent.  Although some inference of fraudulent intent might be drawn from the fact that Brown's car collection became exempt due to this transaction,[2] such an inference is de minimis at best.  See In re Carey, 938 F.2d 1073, 1078 (10th Cir. 1991) (holding that the desire to convert non-exempt assets to exempt status is, by itself, insufficient to support inference of fraud).

In finding that Brown should be denied a discharge under § 727(a)(2)(A),  the bankruptcy court also looked at the differences in valuations of Brown's assets reported on his pre-bankruptcy financial statements and his bankruptcy petition, his failure to list an automobile on his bankruptcy schedules, and the court's finding that Brown had failed to adequately keep records.  The bankruptcy court clearly erred in denying discharge based on the differences in asset values Brown reported on some of his financial statements and his bankruptcy petition.  Uncontroverted evidence introduced by Brown explained many of the disparities.  For example, the financial statements included

----

[2]    Gullickson argues that Brown's bank's attorney's testimony demonstrates fraudulent intent as to the automobile collection.  We disagree.  A fair reading of the passage clearly demonstrates that the attorney's testimony was that Brown had never wanted anyone to obtain a security interest in his cars.  The passage falls far short of saying that Brown was granting the security interest to defraud Gullickson.

Brown's wife's retirement plan and other assets, items which were omitted from the bankruptcy schedules because she was not a debtor in the case. Moreover, an examination of the financial statements reveals a consistent downward trend in Brown's financial condition. Accordingly, it would not be unexpected that this degeneration would accelerate as he and his businesses approached the brink of bankruptcy. Additionally, Brown explained at trial that the earlier financial statements had been to some extent the result of puffery. Though we do not condone such behavior, it does explain the disparity and no creditor is now claiming harm from this behavior. In this case, based upon the record before us and keeping in mind the importance of liberally construing the code in the debtor's favor, we hold that the inference of fraud does not flow from the facial discrepancy in the financial statement and bankruptcy schedule values absent other evidence.

The bankruptcy court's final two bases for finding fraudulent intent also fall short of the mark. As to the failure to list the automobile on the bankruptcy schedules, it is undisputed that the debtor raised the omission of the automobile at the § 341 creditors' meeting. Although Brown should have amended his bankruptcy schedules to correct the error, we believe as a matter of law that no inference of fraudulent intent can be drawn from an omission when the debtor promptly brings it to the court's or trustee's attention absent other evidence of fraud. The purpose of the bankruptcy code is to give the honest

debtor a new start.  See Dalton v. Internal Revenue Service, 77 F.3d 1297, 1300 (10th Cir. 1996).  Thus, we must not penalize the debtor for an inadvertent mistake.

Similarly, as will be explained in greater detail in section III, the bankruptcy court's reliance upon Brown's alleged failure to keep records is also an inadequate basis from which to infer fraudulent intent.  Therefore, the district court and bankruptcy court rulings that Brown should be denied a discharge pursuant to § 727(a)(2)(A) are reversed.

II.

The second issue Brown raises is the district court's affirmance of the bankruptcy court's holding that he should be denied a discharge for making a false oath.  11 U.S.C. § 727(a)(4)(A).  In order to deny a debtor's discharge pursuant to this provision, a creditor must demonstrate by a preponderance of the evidence that the debtor knowingly and fraudulently made an oath and that the oath relates to a material fact.  In re Hadley, 70 B.R. 51, 54 (Bankr. D. Kan. 1987).  It is undisputed that Brown made incorrect entries on his bankruptcy schedules and that he made oaths upon them.  Therefore, the crux of the dispute is whether the oaths were knowing and fraudulent and relate to a material fact. We need not decide whether the oaths were related to material facts because we conclude from the record that the oaths were not knowing and fraudulent.

A debtor will not be denied discharge if a false statement is due to mere mistake or inadvertence.  In re Butler, 38 B.R. at 889.  Moreover, an honest error or mere inaccuracy is not a proper basis for denial of discharge.  See In re Magnuson, 113 B.R. 555, 559

7

(Bankr. D. N.D. 1989).  In finding that Brown's false oaths had been knowing and fraudulent, the bankruptcy court stated, without further analysis, that "In light of the pattern of nondisclosure and Brown's failure to amend his schedules, the court cannot find that Brown's omissions were merely inadvertent."  However, the bankruptcy court does not further support its ruling.   We find the bankruptcy court's reliance on  the "failure to amend" and "pattern of non-disclosure" is not justified based upon this record.  Although Brown did not amend his schedules to reflect the inclusion of the omitted vehicle, he did rectify the omission very early in the process and of his own accord.  The fact that a debtor comes forward with omitted material of his own accord is strong evidence that there was no fraudulent intent in the omission.  See 6 Collier on Bankruptcy § 727.04(2) (15th ed. rev. 1996) (stating items omitted by honest mistake should not be grounds for denial of discharge).

We also find that neither the record before us nor the bankruptcy court's opinion supports the bankruptcy court's findings of a "pattern of non-disclosure."  The pattern the court apparently found was that Brown had omitted a 1962 Chevrolet from a schedule, failed to record an alleged transfer of title of two cars made prior to bankruptcy, and, finally, failed to keep records on four cars sold sometime in 1990-91.

The first piece in the bankruptcy court's pattern--the alleged transfer--apparently did not actually occur.  The record reflects that a bankruptcy schedule mistakenly reflected that two cars were jointly titled to Brown and his wife when in fact this wasn't

8

the case. This alleged error, which made it appear that Brown had potentially fraudulently transferred title to the two cars, was corrected by him orally at trial and no other evidence appears in the record which supports a finding that he transferred the title.

With regard to the four cars which were sold, there is no evidence that the transactions were not disclosed for fraudulent reasons. The bankruptcy occurred in mid-1992 and the cars were apparently sold in late 1990 and in 1991, quite possibly outside of the one-year reporting window. These facts hardly support a "pattern of non-disclosure."

Finally, as to the omission of the Chevrolet in the bankruptcy schedules, we find no basis for drawing an inference of fraudulent intent. The car was one of at least ten vehicles Brown owned, and the record reflects that he raised its omission early in the proceeding. A debtor that comes forward in order to inform the bankruptcy trustee of errors in the filings would not seem to be engaged in a "pattern of non-disclosure" absent other indicia of fraud. We hold that it was clear error for the bankruptcy court to find that Brown knowingly and fraudulently made false oaths. The evidence before the court did not support the bankruptcy court's legal conclusions. We reverse the bankruptcy court's ruling that Brown should be denied a discharge pursuant to § 727(a)(4)(A) and the district court's affirmance of that ruling.

III.

The bankruptcy court also denied Brown's discharge pursuant to § 727(a)(3). The district court reversed, and Gullickson cross-appealed. In order to state a prima facie

9

case, Gullickson had to demonstrate that Brown had failed to maintain and preserve adequate records and that the failure made it impossible to ascertain his financial condition and material business transactions. In re Folger, 149 B.R. 183, 188 (D. Kan. 1992) (emphasis added). Only if Gullickson met his burden did it shift to Brown to justify his failure to maintain the records. In its analysis, the district court noted that it was uncontroverted that the car collection was a hobby, not a business entered into for profit, and cash sales in this hobby were commonplace. Thus, the district court found that any failure to keep records was justified on the facts of the case. We agree with the district court that a failure to keep records was justified on the record and hold that the bankruptcy court clearly erred. Thus, we affirm the district court's reversal of the denial of discharge pursuant to § 727(a)(3).

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED for proceedings consistent with this opinion.