**FILED**

**U.S. Bankruptcy Appellate Panel
of the Tenth Circuit**

**July 16, 2018**

**Blaine F. Bates
Clerk**

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

| | |
|---|---|
| IN RE ADAM L. PEEPLES and JENNIFER K. PEEPLES, | BAP No.    CO-18-003 |
| Debtor. | |
| ADRIAN LEE, | Bankr. No.    14-23970 |
| Plaintiff – Appellant, | Adv. No.    14-2236<br>Chapter    7 |
| v. | OPINION[*] |
| ADAM L. PEEPLES and JENNIFER K. PEEPLES, | |
| Defendants – Appellee. | |

Appeal from the United States Bankruptcy Court
for the District of Colorado

Submitted on the briefs:[**]

Before **MICHAEL**, **KARLIN**, and **ROMERO**, Bankruptcy Judges.

**KARLIN**, Bankruptcy Judge.

---

[*]    This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion.  10th Cir. BAP L.R. 8026-6.

[**]    After examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr. P. 8019(b)(3).  The case is therefore ordered submitted without oral argument.

Longstanding Tenth Circuit precedent dictates that the reasons justifying denial of a discharge to a debtor must be real and substantial—not merely technical or conjectural.[1] Here, a tenacious former landlord seeks to deny the debtors a Chapter 7 discharge mostly over one debtor's failure to retain some financial records from an unsuccessful small business, and both debtors' failure to disclose the extent of a used Barbie doll and DVD collection and some household goods. After a three day trial between two sets of essentially unrepresented parties,[2] the bankruptcy court ultimately concluded that the creditor had not demonstrated real and substantial reasons to justify denying a discharge (or the dischargeability of certain debts). Because the record fully supports that decision, we affirm.

## I. Facts

Adrian Lee (the "Plaintiff") and his wife[3] rented their second large Utah home to Adam and Jennifer Peeples (the "Debtors") and their five young children in February 2012. Because of a troubled housing market, the Plaintiff had previously been unable to sell or consistently rent the house after moving to another home three years earlier. He thus quickly agreed to lease the house to the Debtors without conducting any credit or background checks. Although the Debtors paid a $3,000 security deposit and four consecutive $3,000 rent payments, the

---

[1] *Jones v. Gertz*, 121 F.2d 782, 784 (10th Cir. 1941).

[2] Mr. Lee is a patent lawyer (apparently without trial experience) and elected to represent himself and his wife during the bankruptcy proceedings. The bankruptcy court found them to be sophisticated, and found Mr. Lee to be highly educated. The Debtors were also self-represented, but without the benefit of a legal education. The bankruptcy court clearly faced challenges when dealing with these self-represented parties, including how to weigh testimony from the Debtors that was contrary to admissions from them that Mr. Lee had obtained through improper use of Requests for Admissions and stipulated facts contained in the Pretrial Order. Mr. Lee assigns no error in this appeal to any evidentiary rulings surrounding prior admissions. *See Pre-Trial Order* at 2-5, *in* Appellant's App. at 185-88.

[3] Although Mrs. Lee was also a plaintiff in the adversary proceeding, she did not file a Notice of Appeal. As a result, we will refer to "Plaintiff" in the singular.

Debtors did not make the fourth (June) payment. The Debtors originally contended they had mailed a cashier's check for the rent. In reality, the Debtors were experiencing significant financial problems and ultimately admitted they never mailed that payment.

Even after that default, the Plaintiff was still very motivated to rent or sell the house. He thus entered into a sales contract for the Debtors to buy the house for $655,000. The Debtors defaulted on that contract when they were unable to obtain financing by the agreed deadline. The Plaintiff immediately filed an eviction action, and the Debtors moved out two days later. Because the Debtors did not defend the state court action, the Plaintiff received a default judgment in December of 2012 for $48,665.

The Plaintiff tried to collect the judgment by scheduling a collection proceeding in May of 2013 for the Debtors to appear and disclose their assets. When the Debtors did not appear at that hearing, the state court issued an order to show cause, requiring them to appear in June of 2013. When they also failed to attend that hearing, the state court issued a bench warrant requiring appearance in August of 2013. Like many debtors in severe financial trouble, the Debtors ignored these collection attempts notwithstanding that they apparently had actual notice of the hearings and even attempted to avoid service of process.[4]

During this time, the Debtors had little, if any, income. Mr. Peeples had a business selling silver coins, but it had not been profitable, as evidenced by many insufficient check notices in 2011 and 2012. It had essentially ceased business in 2012. The Debtors' bankruptcy schedules indicated, under penalty of perjury, that they had no personal income from 2012-2014, and that although they had "various

---

[4]     *Pre-Trial Order* at 5, *in* Appellant's App. at 188. Although all methods of service are not in the record, the state court found the Plaintiff mailed and e-mailed notice of at least one of the hearings to the Debtors. Ex. 13, at 2, *in* Appellant's App. at 812.

business ventures" in 2012-2014, those businesses had "no net revenue" and "no tax returns filed."[5] Mr. Peeples also had "serious heart issues," and sought hospital treatment in September of 2012.[6] Even the family's only car—a 2001 Dodge—was repossessed in December of 2012 by Check City and apparently never replaced.

They moved their family of seven at least twice since the eviction, ultimately moving in August 2013 into the home of Mr. Peeples' mother. They believed they did not even have enough income in the two years before they filed bankruptcy (2012 and 2013) to meet the requirements for filing tax returns. Further, the Plaintiff does not contest the bankruptcy court's finding that the Debtors' income fell well below the 2012 poverty guidelines for a family of seven, which was then $34,930.

After the Plaintiff was thwarted from obtaining information about the Debtors' financial condition through these collection hearings, he then filed a second state court action against the Debtors arising out of the failed lease and house purchase contract. This time he alleged communications fraud and common law fraud. The Debtors again defaulted, and the state court entered a second judgment against them—this time for $88,727 in September of 2013. Not giving up, Mr. Lee also filed a third and fourth action against Mr. Peeples and a Scott McCardle in 2013. The Debtors' bankruptcy schedules list the first of those two new cases as one for "Civil Conspiracy, Abuse of Process and Negligence."[7]

Seven months after the second judgment was taken, in April of 2014, the Debtors filed a Chapter 7 bankruptcy petition and listed the Plaintiff's judgments (plus the two pending lawsuits) in their schedules. The Plaintiff filed an adversary proceeding seeking to deny the Debtors' entire discharge pursuant to 11 U.S.C.

---

[5]     *Statement of Financial Affairs* at 1, *in* Appellant's App. at 42.

[6]     *Tr.* at 221, *in* Appellant's App. at 480.

[7]     *Statement of Financial Affairs* at 2, *in* Appellant's App. at 43.

§ 727(a)(2), (a)(3), (a)(4), (a)(5), and (a)(6)[8] and alternatively, objecting to the dischargeability of only the debts the Debtors owed him pursuant to § 523(a)(2) and (a)(4).

Much of the Plaintiff's complaint concerns the lack of records made or retained by Adam Peeples for the business he operated in 2011 and 2012. At trial, Adam Peeples testified he operated a business called LeGrand, LLC; it sold commemorative Silver Eagle coins under the trade name Silver Eagle Store. Mr. Peeples was the sole member of LeGrand, LLC. It did some business in person but primarily sold coins through eBay and accepted payments through PayPal. Mr. Peeples also testified he had kept contemporaneous records for LeGrand, LLC— consisting of a ledger listing assets, liabilities, owner's equity, and individual transactions as well as an envelope holding receipts. But he claims those records were lost after the business ended, likely during one of his family's moves in and after 2012. He looked for the records several times and in several places during the discovery phase of the case to verify they had actually been lost, but never found them.

The parties were nevertheless able to locate some relevant financial records. For example, the Plaintiff introduced bank records from JPMorgan Chase Bank, N.A. ("Chase") both for LeGrand, LLC and another checking account of the Debtors unrelated to LeGrand. The Plaintiff relies heavily on the fact that there were some deposits in the LeGrand account of over $38,000 at one point in March 2012—over two years prior to the bankruptcy filing. During this period, LeGrand, LLC's account had withdrawals of $37,952, of which at least $29,170 was in cash. On the witness stand, some five years after making the cash withdrawals, Mr. Peeples could not recall the details of the cash withdrawals. He did testify that

---

[8]     All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

-5-

LeGrand, LLC commonly used cash to purchase coin inventory and that some of the coin sales transactions had been captured in both eBay and PayPal statements that the Plaintiff had obtained and used during the trial. In any event, the bankruptcy court believed the Debtors when they denied having any of that cash (or any coin inventory) when they filed bankruptcy two years later.

The other part of the trial centered around the Plaintiff's contention that the Debtors had concealed assets within one year of bankruptcy by failing to attend the state court collection proceedings that had been scheduled within a year of bankruptcy. The Plaintiff focused on the Debtors' alleged failure to disclose assets in their bankruptcy schedules, including LeGrand, LLC's purported inventory of silver coins and income received from the sale of silver coins, a Barbie doll collection, and personal goods such as DVDs, a laptop computer, and household furnishings.

Again, the evidence at trial suggested LeGrand, LLC's operations had essentially ceased in April of 2012, but in any event by the summer of 2012. Thus, like the cash, there was apparently no remaining inventory of coins or income from sales to either conceal, or fail to disclose, in the bankruptcy or in any earlier collection proceeding. Regarding the Barbie dolls, the bankruptcy court received testimony from the Plaintiff's expert that seven of the dolls had a combined value of $1,175, and the final twenty dolls had a value of $3,150. But the bankruptcy court also heard from Mrs. Peeples about these dolls—that she had collected them since childhood as a hobby, that they had been removed from their original boxes, had been handled extensively, and had been displayed outside of their boxes. Ultimately, the bankruptcy court gave little weight to the expert's testimony, finding the expert did not clearly articulate his methodology and had not personally

inspected the dolls. As such, the bankruptcy court assigned minimal value, "perhaps no more than that of used toys," to the dolls.[9]

The Plaintiff also argued that the Debtors' discharge should be denied for concealing other assets.[10] The Debtors admitted they had not specifically itemized and disclosed in their bankruptcy schedules their ownership of DVDs they had mostly acquired at thrift shops for their children for $1 or $2 each, of an always "fidgety" and originally very inexpensive laptop computer purchased two years before bankruptcy, and other household furnishings of minimal value.[11] The bankruptcy court concluded that the Debtors lacked valuable assets when they filed their bankruptcy petition or within the year preceding the filing, finding that the Debtors had no intent to conceal assets.

The bankruptcy court came to the same conclusion regarding the Plaintiff's claim that the Debtors had intended to hinder, delay, or defraud him by not attending the collection hearings in 2013. Noting that they literally had no assets of value to hide, the court could find no evidence that they had the requisite intent when they failed to appear. Additional evidence supporting the bankruptcy court's conclusion that these Debtors had no real assets to hide includes these facts taken from the Debtors' bankruptcy filings: neither had any income in 2012-2014 and were both unemployed on the petition date, they had no business with any net income in 2012-2014, they had miscellaneous pay day type loans (which typically

---

[9]     *Memorandum Decision* at 16, *in* Appellant's App. at 216.

[10]     The Plaintiff originally asserted this as a § 727(a)(4) claim, alleging that the Debtors failed to list these assets in their bankruptcy schedules. The bankruptcy court held against the Plaintiff on this claim, finding that it could not infer a fraudulent intent from failure to list assets of such *de minimis* value. The Plaintiff does not appeal the denial of his § 727(a)(4) claim, instead now emphasizing that he cannot know what property was concealed because of the Debtors' failure to attend collection proceedings in violation of § 727(a)(2) and because of Mr. Peeples' failure to retain business records.

[11]     *Memorandum Decision* at 34, *in* Appellant's App. at 234.

come with high interest rates), they had over $329,000 in unsecured debt dating back to 2004, including numerous bank overdraft charges and over $80,000 in loans from individuals and relatives, and they still had no car almost five years after their then 11 year old car had been repossessed in 2012. Mrs. Peeples even needed to resort to selling the majority of the Barbie dolls she had collected since childhood, for around $10 apiece, in the fall of 2012 to raise funds to support the large family. Finally, these Debtors were so strapped they even had to borrow the money to hire an attorney to file the bankruptcy and to pay the filing fee.

## II. Appellate Jurisdiction and Standard of Review

"With the consent of the parties, this Court has jurisdiction to hear timely-filed appeals from 'judgments, orders, and decrees' of bankruptcy courts within the Tenth Circuit."[12] An order resolving all claims asserted in an adversary proceeding is a final order for purposes of 28 U.S.C. § 158(a).[13] Neither the Plaintiff nor the Debtors elected for this appeal to be heard by the United States District Court pursuant to 28 U.S.C. § 158(c). Accordingly, this Court has jurisdiction over this appeal.

Whether to grant or deny a discharge falls within the bankruptcy court's discretion and is reviewed for abuse of discretion.[14] However, a bankruptcy court's legal conclusions are reviewed de novo,[15] while the "factual findings, which

---

[12]     *Straight v. Wyo. Dep't of Trans. (In re Straight)*, 248 B.R. 403, 409 (10th Cir. BAP 2000) (quoting 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1)).

[13]     *Adelman v. Fourth Nat'l Bank & Tr. Co, N.A., of Tulsa (In re Durability, Inc.)*, 893 F.2d 264, 266 (10th Cir. 1990) ("the appropriate 'judicial unit' for application of [ ] finality requirements in bankruptcy is not the overall case, but rather the particular adversary proceeding" (citing multiple cases)).

[14]     *United States Tr. v. Garland (In re Garland)*, 417 B.R. 805, 810 (10th Cir. BAP 2009).

[15]     *Lang v. Lang (In re Lang)*, 293 B.R. 501, 508 (10th Cir. BAP 2003) (first citing *Phillips v. White (In re White)*, 25 F.3d 931, 933 (10th Cir. 1994), and then

(continued...)

underpin [the bankruptcy court's] legal conclusions, are reviewed for clear error."[16] A factual finding is "clearly erroneous" when "it is without factual support in the record, or, if the appellate court, after reviewing all the evidence is left with the definite and firm conviction that a mistake has been made."[17]

### III. Analysis

#### A. Issues Presented on Appeal

We begin by defining the scope of this Court's review. At trial, the Plaintiff sought to deny the dischargeability of the debts the Debtors owe him pursuant to two subsections of § 523 and to also deny the Debtors' their entire discharge pursuant to five subsections of § 727. In his appellate brief, however, the Plaintiff only addresses his § 727(a)(2)(A) and (a)(3) claims. Accordingly, our review is confined to those claims.[18]

#### B. Failure to Keep Records - § 727(a)(3)

As we recently reiterated in *Martinez v. Sears (In re Sears)*, a prima facie case under § 727(a)(3) requires a creditor or trustee to show that the "debtor 'failed to maintain and preserve adequate records and that the failure made it *impossible* to

---

(...continued)
citing *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1370 (10th Cir. 1996)).

[16]     *Martinez v. Sears (In re Sears)*, 565 B.R. 184, 188 (10th Cir. BAP 2017) (citing *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1292 (10th Cir. 1997); *see also The Cadle Co. v. Stewart (In re Stewart)*, 263 B.R. 608, 611 (10th Cir. BAP 2001)); *United States Tr. v. Garland (In re Garland)*, 417 B.R. 805, 810 (10th Cir. 2009).

[17]     *In re Sears*, 565 B.R. at 188 (quoting *Le Maire ex rel. Le Maire v. United States*, 826 F.3d 949, 953 (10th Cir. 1987)).

[18]     *Bronsen v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (explaining "the omission of an issue in an opening brief generally forfeits appellate consideration of that issue" (citing *Wyoming v. Livingston*, 443 F.3d 1211, 1216 (10th Cir. 2006))); *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011) (stating "we will entertain forfeited theories on appeal, but we will reverse a district court's judgment on the basis of a forfeited theory only if failing to do so would entrench a plainly erroneous result" (citing *United States v. Zubia-Torres*, 550 F.3d 1202, 1205 (10th Cir. 2008))).

ascertain his [or her] financial condition and *material* business transactions.'"[19] If this initial burden is met, the burden then shifts to the debtor to justify his or her failure to maintain the records. The ultimate burden under § 727 rests with the plaintiff and must be proven by a preponderance of the evidence.

Section 727(a)(3) is intended to allow creditors to reasonably ascertain a debtor's present financial condition and to follow his business transactions for a reasonable period in the past.[20] The scope of any debtor's duty to maintain records, however, depends on the nature of that debtor's business (if any) and the facts and circumstances of each case.[21] When a debtor conducts a business involving substantial assets, "'greater and better record keeping' is warranted."[22] But "reasonably wide discretion is lodged in the bankruptcy court in determining whether the books of account or records in a given case are sufficient to meet the requirements of the statute."[23] And in consumer cases, which this bankruptcy was in all reality, debtors have a much diminished obligation to keep books.[24]

The record establishes—and the Plaintiff does not seriously challenge on appeal—that Mr. Peeples[25] did, in fact, keep a ledger and receipts for LeGrand,

---

[19]  *In re Sears*, 565 B.R. at 189 (quoting *In re Stewart*, 263 B.R. at 615).

[20]  *In re Asif,* 455 B.R. 768, 791 (Bankr. D. Kan. 2011) (quoting *Mercantile Peninsula Bank v. French (In re French)*, 499 F.3d 345 (4th Cir. 2007).

[21]  *In re Sears*, 656 B.R. at 189-90 (quoting *Bailey v. Ogden (In re Ogden)*, No. UT-98-042, 1999 WL 282732, at *6 (10th Cir. BAP Apr. 30, 1999)).

[22]  *Id.* at 190 (quoting *Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 762 (9th Cir. 2008)).

[23]  *Johnson v. Bockman*, 282 F.2d 544, 546 (10th Cir. 1960) (citing *Marx v. Garner (In re Marx)*, 125 F.2d 335 (7th Cir. 1942)).

[24]  *In re Ogden*, 1999 WL 282732, at *6; 6 *Collier on Bankruptcy* ¶ 727.03[3][a] (16th ed. 2018).

[25]  It appears the Plaintiff's § 727(a)(3) claim is only against Mr. Peeples, since there is no factual basis for charging Mrs. Peeples with failure to keep

(continued...)

LLC/Silver Eagle Store until the business ceased operating. The Plaintiff does assign error to the bankruptcy court's citation of case law involving the failure to *keep* records, rather than the failure to *preserve* records. To the extent the Plaintiff argues the court committed legal error in failing to recognize the distinction between keeping and preserving records, this argument fails.

It fails because the bankruptcy court quoted the text of § 727(a)(3), which includes the preservation requirement. In addition to citing case law referencing the requirement to keep records, the court also quoted case law stating: "The test is whether there is available written evidence made and preserved from which the present financial condition of the bankrupt and his business transactions . . . may be ascertained."[26] Therefore, the bankruptcy court recognized § 727(a)(3)'s requirement to keep *and* preserve business records and thus did not commit legal error.

The Plaintiff next argues that because Mr. Peeples claimed he must have lost the business records during his family moves, his discharge should be automatically denied because he then failed to preserve those records. As a preliminary matter, in so arguing, the Plaintiff ignores the last clause of § 727(a)(3), which excuses such failures if they were "justified under all of the circumstances of the case." The bankruptcy court held that the failure to preserve the records was justified under all the circumstances, finding that Mr. Peeples likely lost the business records when he moved his family to a different residence. Such findings are reviewed for clear error, and we find none.

---

(...continued)
LeGrand, LLC business records.

[26]     *Memorandum Decision* at 29, *in* Appellant's App. at 229 (quoting *Meridian Bank v. Alten*, 958 F.2d 1126, 1230 (3d Cir. 1992)).

In addition to finding that the loss of the records was justified, the bankruptcy court also found that because certain records kept by third party financial institutions with which Mr. Peeples did business had maintained those records, it was also possible to ascertain the Debtors' overall financial condition by reviewing those records and examining other evidence presented. Specifically, the bankruptcy court explained that it was reasonable for the Debtors to rely on third parties (such as PayPal, Chase, and eBay) to maintain copies of various business and household accounts that the Debtors could, in turn, access via the internet "[g]iven the state of information technology and business practices."[27]

The Plaintiff disagrees that Mr. Peeples should be allowed to rely on records maintained by third parties to meet the requirement for him to preserve the business records under § 727(a)(3). He also argues that even if that proposition was generally true, the bankruptcy court abused its discretion to allow that here because many of the account statements the bankruptcy court pointed to were not admitted at trial (or in the case of the PayPal records, were admitted for the limited purpose of showing the existence of the accounts and were impossible to interpret without a competent witness).

First, we agree with the bankruptcy court that in today's electronic age, it is reasonable for a debtor to assume that relatively recent financial records can be easily accessed online without the need to simultaneously retain paper copies of those records.[28] As a result, we reject the Plaintiff's request for a holding that Mr.

<hr>

[27] *Id.* at 30, *in* Appellant's App. at 230. The Plaintiff complains that the bankruptcy court referenced bank account records—plural—when in fact only the records of one bank (Chase) was admitted. Although it does appear the court erred in referencing "banks," instead of noting that there were two separate Chase bank accounts admitted into evidence, this Court finds that error immaterial in light of the entire record on appeal.

[28] *See Chase Bank USA, N.A. v. Ritter (In re Ritter)*, 404 B.R. 811, 834 (Bankr. E.D. Pa. 2009) (holding that the debtor was justified in failing to

(continued...)

Peeples' failure to retain a "persistent backed-up copy"[29] of such records required the bankruptcy court deny his discharge.

Next, while it would be concerning to exclusively rely on third party records that were never discussed nor admitted into evidence to satisfy the record preservation requirement, there was adequate additional evidence that allowed the bankruptcy court to evaluate the Debtors' overall financial condition at the time they filed their bankruptcy petition. First, there was no evidence that LeGrand, LLC conducted any business after the spring or summer of 2012, or had any remaining assets of any value thereafter.[30] As a result, the absence of more detailed records was less relevant to ascertaining the Debtors' finances two years later when they filed for bankruptcy.

As noted above, the record is replete with examples demonstrating how financially strapped these Debtors were upon (and up to two years prior to) filing bankruptcy, including their default on the lease payments, failure to follow through with the contract to purchase the home due to their inability to obtain financing, Mr. Peeples' health conditions precluding him from working full time, their failure to pay utility bills, the fact the family had needed to apply for a "pay day" type

---

(...continued)
personally maintain copies of account records for three credit cards because it was "fair for the Debtor to assume that, regardless of whether she maintained a set of past statements, her account information would nonetheless still exist in electronic form and be retrievable—at least for a reasonable period of time"). *But see O'Hearn v. Gormally* (*In re Gormally*), 550 B.R. 27, 54 (Bankr. S.D.N.Y. 2016) (holding the determination is not whether the creditor could have obtained from other sources some or all of the records necessary to reconstruct the debtor's history; instead the question is whether the creditor demonstrated a prima facie case that debtor's financial history could not be constructed from the records provided by the debtor (citing a case with multi-million dollar assets and multiple businesses: *Bronfman v. O'Hara* (*In re O'Hara*), No. 11-CV-0807, 2013 WL 1751001, at *7 (N.D.N.Y. Apr. 23, 2013)).

[29]     Appellant's Br. 29.

[30]     *See Cobra Well Testers, LLC v. Carlson (In re Carlson)*, No. 06-8158, 2008 WL 8677441, at *4-5 (10th Cir. Jan. 23, 2008) (holding debtor had no obligation to keep business records where business assets were sold prior to petition date).

loan through Check N'Go in June of 2012, as well as the Debtors' general lack of income after the unprofitable silver coin business stopped operating. There was simply no hint the Debtors were hiding assets of any value, perhaps highlighted by the Debtors' decision to house their family of seven with a relative for at least the four years preceding the trial and electing to not replace their only (then 11 year old) vehicle after its repossession in 2012.

The Plaintiff also makes much of the evidence surrounding $29,398 in cash withdrawals from the business in March of 2012, and the surrounding testimony of a witness—Evan Twede—regarding some of that cash. The Plaintiff ultimately speculates that if the Debtors had secretly invested that money back in 2012 in bitcoins, their "net worth could potentially be millions today."[31] Again, we find no fault here with the bankruptcy court's conclusion that since the business had essentially ceased to function two years before the bankruptcy, the failure to have preserved the business records that might have shown the ultimate use for each of those dollars does not justify a finding that Mr. Peeples should be denied his discharge in light of all the circumstances.

### C.    Concealment of property of the estate - § 727(a)(2)(A)

To prevail on his § 727(a)(2)(A) claim, the Plaintiff must show by a preponderance of the evidence that (1) these Debtors transferred, removed, concealed, destroyed, or mutilated, (2) property of the estate, (3) within a year prior to the bankruptcy filing, and (4) did so with actual intent to hinder, delay, or defraud him.[32] The Plaintiff only argues concealment here.

A debtor generally conceals property by "retaining all preexisting property interests by attempts to keep the property out of reach of creditors or the estate by

---

[31]    Appellant's Br. 27.

[32]    *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1293 (10th Cir. 1997) and *Marine Midland Bus. Loans, Inc. v. Carey (In re Carey)*, 938 F.2d 1073, 1077 (10th Cir.1991) (requiring "*actual* intent to defraud").

secreting or refusing to reveal the location of the property."[33] It thus stands to reason that for the Plaintiff to prevail, he must show that the Debtors likely had assets of value to conceal, and were thus motivated to hide that information from the Plaintiff so he could not execute on that property to satisfy his default judgments. The bankruptcy court recognized this issue by placing the burden on the Plaintiff "to establish that the Peeples owned and concealed [valuable] property."[34]

The Plaintiff argues the bankruptcy court was required to find that the Debtors concealed assets within the year preceding bankruptcy, with the intent to hinder, delay, or defraud him, merely by electing not to attend the collection hearings and to evade service of process for those hearings in 2013. The Plaintiff also argues the bankruptcy court erred in interpreting § 727(a)(2)(A), alleging it failed to individually analyze "intent to hinder" from "intent to delay" from "intent to defraud." The Plaintiff cites the Tenth Circuit's unpublished decision, *Rupp v. Pearson*,[35] for the proposition that he only needs "to show actions [were] taken with intent to 'hinder or delay creditors.'"[36]

As a preliminary matter, we agree that a plain reading of § 727(a)(2)(A) requires only that a party prove, as the fourth element, that the debtor did any of the three actions by a preponderance of the evidence: intent to hinder, or intent to delay, or intent to defraud. The bankruptcy court did not hold otherwise. It found that Plaintiff failed to prove by a preponderance of the evidence that the Debtors'

---

[33]     Fraudulent transfers and concealment (Code § 727(a)(2))—Intent of debtor, 4 *Norton Bankr. L. & Prac.* 3d § 86:5 (3d ed. 2018).

[34]     *Memorandum Opinion* at 27, in Appellant's App. at 227.

[35]     658 F. App'x 446, 450 (10th Cir. 2016).

[36]     *Id.*

failure to attend the collection hearings was done with an actual intent to hinder or delay the Plaintiff's collection actions or to defraud him.

The Plaintiff insisted at trial, and continues to insist, that the Debtors had property in the form of cash assets and perhaps silver coins within a year of bankruptcy and that the Debtors' failure to appear at the collection hearings prevented the Plaintiff from discovering that or additional property the Debtors owned during that timeframe.

To the first argument, the Plaintiff fails to point to evidence of specific property the bankruptcy court overlooked. The court found no evidence the Debtors owned any property of value from June 2012 forward. To the extent the Plaintiff relies on the fact Mr. Peeples had withdrawn approximately $29,000 in several cash transactions in March of 2012, that withdrawal was well outside § 727(a)(2)(A)'s one-year lookback period *and* it was well before any of the collection hearings. We also find no error with the bankruptcy court's logical conclusion that the Debtors' family of seven "would need this income for living expenses, including payment of rent to the [Plaintiff]."[37]

In support of his second argument, the Plaintiff cites case law from outside of the Tenth Circuit generally holding a debtor acts with intent to hinder or delay by flouting collection attempts. But in each of those cases, the evidence showed the debtors had in fact transferred or concealed valuable property, such that earlier collection efforts might have made an actually valuable asset available for collection. Again, on appeal, the only asset the Plaintiff points to is the $29,000 cash withdrawn from the business account during March 2012.[38] But again, this

---

[37]     *Memorandum Decision* at 38, *in* Appellant's App. at 238.

[38]     Although the Plaintiff vigorously argued at trial about the value of Mrs. Peeples' Barbie dolls—even calling an expert witness from Florida to testify in the Utah court about the value of the dolls, and also suggested the family's used

(continued...)

withdrawal occurred before the Plaintiff had any legitimate claim for rent or a judgment and well outside the one-year period required by § 724(a)(2)(A).

We will also address the contention that if Mr. Peeples had only preserved the business records, the Plaintiff *would* have been able to prove concealment. But the Plaintiff had the benefit of discovery in the adversary proceeding and still failed to convince the bankruptcy court that the Debtors concealed any assets, let alone that they did so with the intent to hinder or delay. The trial court had the ability during three days of trial to assess the Debtors, including during their individual testimony. While the bankruptcy court did not always find Mr. Peeples' testimony credible,[39] it was ultimately convinced that the Debtors had no significant assets to conceal, and thus they had no motivation to hinder or delay the Plaintiff when they failed to attend the collection hearings.

Although we do not excuse the Debtors' decision not to obey a state court order(s) to appear, we also do not find that, without more, the decisions they made not to attend constitute proof of an intent to delay or hinder collection. In sum, in light of the abundant evidence showing these Debtors had no valuable assets to conceal at the time of these collection proceedings, we find no error in the bankruptcy court's decision not to infer intent merely by the Debtors' decision to avoid those hearings.

---

(...continued)
DVD collection, and a cheap and dated laptop computer, were all valuable assets he could have learned about at a collection hearing, he appears to have wisely dropped all argument that there were assets of value except the possibility the cash withdrawn in March 2012 might have still been in the Debtors' possession by the time of the collection hearings a year later.

[39] For example, the bankruptcy court did not find credible Mr. Peeples' testimony that his business was successful (but admittedly made no profit). Instead the bankruptcy court held that "[a]lthough the Court does not find Mr. Peeples'[] testimony credible, that does not establish that his business was successful. In fact, the evidence is that his business was neither successful nor significant." *Memorandum Decision* at 12-13, *in* Appellant's App. at 212-13.

## IV.    Conclusion

Since 2012, when he elected to rent a home to the Debtors' large family without first confirming they had the financial ability to pay the $3,000 a month rent, the Plaintiff has aggressively pursued these Debtors. Soon after he filed his fourth state court action aimed at collecting the unpaid rent, the Debtors filed bankruptcy seeking a fresh start. Noting that the Bankruptcy Code must be construed liberally in favor of debtors and strictly against creditors, the bankruptcy court ultimately found that the Plaintiff had not met his burden to prove that the Debtors had valuable assets that they had concealed within a year of filing bankruptcy, or that Mr. Peeples had improperly failed to keep or retain records. The bankruptcy court also found that their failure to attend collection hearings was not done with the intent to hinder, delay, or defraud the Plaintiff. Our review of all the evidence leaves us with no definite or firm conviction that a mistake has been made. Finding no abuse of the bankruptcy court's discretion, the judgment is AFFIRMED.

**CONCURRENCE**, by J. Romero joined by J. Michael.

We fully concur with the findings of Judge Karlin in the above ruling.

This concurrence is to acknowledge this opinion brings to an end the notable tenure of Judge Janice Karlin with the Tenth Circuit Bankruptcy Appellate Panel. Throughout this period, Judge Karlin has exhibited her remarkable legal abilities and to her peers, has been a joy to work with and has served as an inspiration to all of us. We thank her for giving us the privilege of working with her and will miss her in the years to come.