FILED
**United States Court of Appeals**
**Tenth Circuit**

**September 16, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

In re:  DUSTIN WHEELER,

    Debtor.

------------------------------

CADLEROCK III, LLC, an Ohio limited
liability company,

    Plaintiff - Appellee,

v.

DUSTIN WHEELER,

    Defendant - Appellant.

No. 24-6215
(D.C. No. 5:22-CV-01069-G)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TYMKOVICH**, **MORITZ**, and **EID**, Circuit Judges.

_____

Debtor-Appellant Dustin Wheeler appeals the bankruptcy court's order

denying discharge based on his conduct.  Wheeler argues his conduct does not

evidence fraudulent intent; but his actions speak louder than words.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

In a short period, Wheeler executed a series of property transfers to a wealth preservation trust he established under Oklahoma law. Each of these transfers happened at pivotal times in Wheeler's financial journey. Integral to this journey was Appellee Cadlerock III, LLC, filing a lawsuit in federal district court seeking payment on loans Wheeler guaranteed. The district court entered judgment against Wheeler in September 2019. Shortly after, he began transferring property out of his name, and by fall 2021 he filed a petition for chapter 7 bankruptcy relief. In response, Cadlerock initiated an adversary proceeding requesting the bankruptcy court deny Wheeler's discharge under 11 U.S.C. § 727(a)(2)(A).

After a trial, the bankruptcy court entered an order denying discharge. Wheeler appealed, and the district court affirmed. This appeal followed. Exercising jurisdiction under 28 U.S.C. §§ 158(d) and 1291, we affirm.

## I.     Background

This appeal stems from litigation related to Wheeler's guarantee of the business debts held by Bank of Union for his then-wife Shana Wheeler. During their marriage, Wheeler and Shana made several decisions to protect certain assets. First, they executed the Operating Agreement of Wheeler Land and Cattle LLC (the "LLC"). Next, Wheeler created the Dustin Wheeler Preservation Trust (the "Trust"), naming his children as the beneficiaries. Then Wheeler and Shana executed an assignment conveying their membership interest in the LLC to the Trust.

In 2011, Wheeler and Shana divorced, causing Wheeler to partially revoke the Trust to pay her approximately $1.7 million in divorce settlement obligations. A few

2

years later, Wheeler established another trust, the Dustin W. Wheeler Revocable

Trust (the "Revocable Trust"), for which he appears to be the Trustee and

beneficiary.

Between 2011 and 2019, many events led to Wheeler's bankruptcy.

- Sometime after the divorce, Shana defaulted on the business loans, and Bank of Union failed.

- In 2016, Cadlerock purchased the defaulted loans and then sued Wheeler in federal district court to collect on the guarantee.

- In September 2018, the district court entered judgment in favor of Wheeler (the "September 2018 Judgment"). Cadlerock timely appealed the September 2018 Judgment to this court.

- Also in 2018, Wheeler (or the Revocable Trust—it's unclear) bought a property in Oklahoma City (the "OKC Property").

- In January 2019, Wheeler, as trustee of the Revocable Trust, executed a quitclaim deed to transfer, with no consideration, certain real property (the "Chevrolet Property") to the LLC (the "Chevrolet Property Transfer").

- In June 2019, this court reversed the September 2018 Judgment and instructed the district court to enter judgment in favor of Cadlerock. *See Cadlerock III, LLC v. Wheeler*, 779 F. App'x 519, 520, 528 (10th Cir. 2019).

- In July 2019, the Chevrolet Property deed was recorded.

- In September 2019, the district court entered judgment against Wheeler in the amount of $5,066,150.17 plus interest and attorney's fees (the "September 2019 Judgment").

- In November 2020, Wheeler and his second wife, Michelle Wheeler, took out a personal loan to purchase a home in Shangri-La Estates in Delaware County, Oklahoma (the "Lake House" and, together with the OKC Property, the "House Properties"). Notably, Wheeler did not report the September 2019 Judgment on his personal financial statements for that transaction.

3

- In December 2020, Wheeler, acting as trustee and beneficiary of the Revocable Trust, transferred, with no consideration, the OKC Property to the LLC.

- In January 2021, Wheeler and Michelle executed a quit claim deed transferring, with no consideration, the Lake House to the LLC.

- In July 2021, Cadlerock obtained a charging order in state court on the LLC.

- In August 2021, Wheeler executed the Amended and Restated Operating Agreement of the LLC, identifying the Trust as the sole member of the LLC.

- On October 21, 2021, Wheeler filed his voluntary petition for chapter 7 bankruptcy relief.

In the bankruptcy case, Cadlerock initiated an adversary proceeding requesting the bankruptcy court deny Wheeler's discharge. After the trial, the bankruptcy court found Cadlerock did not meet its burden to show Wheeler transferred the Chevrolet Property within one year of the petition date to satisfy § 727(a)(2)(A). Even so, the bankruptcy court noted the suspicious timing of the Chevrolet Property Transfer. It observed that seven months lapsed between the date on the Chevrolet Property deed and its recording, and the recording occurred shortly after this court reversed the September 2018 Judgment in favor of Wheeler. The bankruptcy court concluded that, despite being outside the one-year lookback period, the Chevrolet Property Transfer provided evidence that Wheeler engaged in a pattern of conduct from which it was appropriate to infer fraudulent intent.

The bankruptcy court also noted Wheeler transferred the House Properties (the "House Transfers"), without consideration, during the one-year lookback period. In sum, the bankruptcy court concluded Wheeler transferred the House Properties with

4

actual intent to hinder, delay, or defraud his creditors based on (i) the express purpose of the Trust, (ii) the fact that he received no consideration for any of the transferred property, (iii) his continued personal use of the House Properties thereafter, (iv) his continued ownership representations of all transferred properties on financial documents, and (v) the timing of all the property transfers.

During the trial at the bankruptcy court, Wheeler explained that the Family Wealth Preservation Trust Act (the "Family Trust Act") provides that a grantor may replenish a preservation trust by transferring property up to the value of previously revoked assets, and that such transfers preserve statutory exemption rights for the transferred property. He also explained he made these transfers under the advice of counsel. In response to Wheeler's explanations, the bankruptcy court found Wheeler's belief that the transfers were lawful replenishments to the Trust and purported reliance on his counsel incredible. The bankruptcy court observed the concept of replenishment was rendered meaningless when the state legislature eliminated the contribution cap. It then noted the Family Trust Act clearly states the Oklahoma Uniform Fraudulent Transfer Act (the "UFTA") applies to all transfers into a trust. *See* Okla. Stat. Ann. tit. 31, § 17. So the bankruptcy court determined the Family Trust Act did not create any protections for transfers into a trust, and the House Transfers here ran afoul of the UFTA. The bankruptcy court also concluded that because Wheeler was not forthcoming with all material facts to his counsel— such as the September 2019 Judgment—while seeking advice on the transfers, he

could not successfully rely on the advice-of-counsel defense. For these reasons, the

bankruptcy court denied the discharge under 11 U.S.C. § 727(a)(2)(A).

## II.    Issues on Appeal

Wheeler effectively presents two issues on appeal: (1) whether the bankruptcy

court clearly erred in finding Wheeler acted with the intent to hinder, delay, or

defraud Cadlerock;[1] and (2) whether the bankruptcy court erred by failing to consider

the de minimis value of the House Properties in relation to the total debt.

## III.    Standard of Review

We independently review bankruptcy court decisions and owe no deference to

the district court from which the appeal was filed. *Search Mkt. Direct, Inc. v. Jubber*

*(In re Paige)*, 685 F.3d 1160, 1178 (10th Cir. 2012). We may, however, look to the

district court's intermediate appellate analysis as it may be persuasive. *Id.*

We review the bankruptcy court's legal determinations de novo and factual

findings for clear error. *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1292

(10th Cir. 1997). In our review, we construe the Bankruptcy Code liberally in favor

of the debtor and strictly against the creditor. *Id.* De novo review requires this court

to independently determine the issues, giving no weight to the bankruptcy court's

determinations. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991). A factual

finding is clearly erroneous if, after reviewing all the evidence, we are "left with a

---

[1] Wheeler does not dispute he transferred property of the estate within one year
of his bankruptcy filing.

definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

IV.    Discussion

To succeed on a claim to deny a discharge under 11 U.S.C. § 727(a)(2)(A), the party objecting to discharge must show, by a preponderance of the evidence, that: "(1) the debtor transferred, removed, concealed, destroyed, or mutilated, (2) property of the estate, (3) within one year prior to the bankruptcy filing, (4) with the intent to hinder, delay, or defraud a creditor." *In re Brown*, 108 F.3d at 1293.

"To deny a discharge . . . , a court must find *actual* intent to defraud creditors." *Mathai v. Warren (In re Warren)*, 512 F.3d 1241, 1249 (10th Cir. 2008) (internal quotation marks omitted).  Because a party will rarely set out its subjective intent, actual fraudulent intent may be inferred based on certain indicia or "badges of fraud." *Id.* at 1250.  We have determined the following actions may constitute badges of fraud:  (1) a debtor's concealment of prebankruptcy asset conversions; (2) the conversion of assets immediately before filing a bankruptcy petition; (3) the gratuitous transfer of property; (4) the continued use of that transferred property; and (5) the transfer of property to family members.  *Marine Midland Bus. Loans, Inc. v. Carey (In re Carey)*, 938 F.2d 1073, 1077 (10th Cir. 1991).  We may also consider the value of the converted assets in our analysis.  *Id.*  But each case is fact specific and requires an individualized inquiry.  *Id.*

Wheeler makes three arguments on appeal as to why Cadlerock failed to establish a prima facie case to support a denial of discharge under § 727(a)(2)(A).

7

First, he asserts the bankruptcy court erred by considering the Chevrolet Property Transfer in its fraudulent-intent analysis because it fell outside the one-year lookback period. Second, he contends he sought advice from counsel and made the House Transfers under the belief that they were proper replenishments to the Trust that preserved statutory exemption rights under Oklahoma law. And third, he argues judicial precedent supports discharge when a transfer's value is de minimis in relation to the total debt.

### A.

We will not consider Wheeler's first argument on appeal because, contrary to Wheeler's suggestion in his brief, the denial of discharge was not based on the Chevrolet Property Transfer. Instead, the bankruptcy court made it clear (as mentioned above) that it considered the Chevrolet Property Transfer only for the purpose of inferring fraudulent intent and as indicative of a pattern of conduct that supported denying the discharge based on the House Transfers—especially given Wheeler provided no explanation for the seven-month delay in recording the Chevrolet Property transfer deed. Thus, Wheeler raises this issue in error as he mischaracterizes the nature of the Chevrolet Property Transfer in the bankruptcy court's decision. We now discuss the remaining issues in turn.

### B.

Wheeler challenges the fraudulent-intent finding based on the House Transfers by presenting a two-pronged argument contending they were (1) proper replenishment contributions to the Trust, and (2) made with the advice of counsel.

Cadlerock responds that the concept of replenishment contributions no longer applies, and the House Transfers ran afoul of the UFTA, which supports fraudulent intent. Cadlerock also responds Wheeler cannot rely on his counsel's advice that the transfers were lawful because he did not notify his counsel of the September 2019 Judgment. We address each prong in turn.

i.

The bankruptcy court determined Wheeler's reliance on the statutory language of the Family Trust Act was misplaced. We agree. The Family Trust Act provides for the creation of a trust where the corpus and income of the trust are exempt property. Okla. Stat. Ann. tit. 31, § 12. But it also expressly states that any transfer by the grantor to the trust is subject to the UFTA. Okla. Stat. Ann. tit. 31, § 17. Under the UFTA, "[a] transfer made . . . by a[n] [insolvent] debtor" or a transfer that causes a debtor to become insolvent "is fraudulent as to a creditor whose claim arose before the transfer . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . ." Okla. Stat. Ann. tit. 24, § 117(A).

At bottom, Wheeler argues he provided evidence to show he made the transfers with the intent to "replenish" the Trust, so the transferred property is exempt, which negates any fraudulent intent. We are unpersuaded. Oklahoma removed the contribution limitations that were initially included in the Family Trust Act, which eliminated any need to account for the value of contributions following the partial revocation of assets from a preservation trust. S.B. 1904, 2014 Okla. Sess.

9

Law Serv. ch. 102 (Okla. 2014). So it seems the concept of replenishment is no longer relevant. But even if it was relevant, the plain language of section 17 of the Family Trust Act states, without limitation, that any transfer by a grantor to a preservation trust is subject to the UFTA. Okla. Stat. Ann. tit. 31, § 17. No replenishment exception exists in the text. *See id.* Nor does Wheeler provide case law to support his position. So, the bankruptcy court correctly concluded that even if the House Transfers were replenishment contributions, they still ran afoul of the UFTA, which supports an inference of actual fraudulent intent.

ii.

The bankruptcy court found Wheeler's advice-of-counsel defense incredible because he failed to tell his counsel about the September 2019 Judgment and admitted he did not do so at trial.

An advice-of-counsel defense serves to negate intent. *C.E. Carlson, Inc. v. S.E.C.*, 859 F.2d 1429, 1436 (10th Cir. 1988). One of the elements requires the party asserting the defense to show "full disclosure of the relevant facts to counsel." *Id.* No full disclosure occurred here. Because Wheeler failed to disclose the September 2019 Judgment to his counsel prior to making the House Transfers, the advice-of-counsel defense fails.

C.

Wheeler asserts the bankruptcy court erred by failing to consider that the House Properties had de minimis value relative to his debts, so the denial of

discharge was not appropriate. Cadlerock contends there is no de minimis exception to discharge. We agree with Cadlerock.

This court has not recognized a de minimis value exception to denying discharge. Nor has Wheeler provided binding authority that it must.[2] Rather, we have recognized the monetary value of converted assets may be a factor in analyzing fraudulent intent. *In re Carey*, 938 F.2d at 1077. Here, we see no flaw in the bankruptcy court's analysis, and thus conclude that the de minimis value of the House Properties has no bearing on whether Wheeler acted with fraudulent intent.

## V.     Conclusion

Because Cadlerock satisfied the requirements for a prima facie case under § 727(a)(2)(A), and we are not left with a definite and firm conviction that the

---

[2] Wheeler cites *Addison v. Seaver (In re Addison)*, 540 F.3d 805 (8th Cir. 2008), and *West Kentucky Production Credit Ass'n. v. Brame (In re Brame)*, 23 B.R. 196 (Bankr. W.D. Ky. 1982). This court is not bound by either case. Nor does either case stand for the proposition he asserts. In *Addison*, the Eighth Circuit's analysis did not focus on the value of the assets converted from nonexempt to exempt property relative to the debts, but rather focused on the facts and circumstances surrounding the transactions and did not find extrinsic evidence of fraud. 540 F.3d at 815-16. And in *Brame*, the bankruptcy court determined the debtor did not have wrongful intent because he converted the property under the advice of counsel. 23 B.R. at 199. The bankruptcy court in *Brame* did provide alternative reasoning based on the value of the property converted relative to the debt but suggested the analysis calls for a balance of equities. *Id.*

bankruptcy court made a mistake in its factual findings, we conclude the bankruptcy

court did not err in denying Wheeler's discharge.

Entered for the Court

Nancy L. Moritz
Circuit Judge